DAVID PRATT et al., Executors, etc., Appellants, *v.* EDGAR
MUNSON et al., Respondents.

The provision of the act of 1853 in reference to the foreclosure of railroad
  mortgages (§ 2, chap. 502, Laws of 1853), which provides that a stock-
  holder of a railroad company may, within six months after a sale of its
  road under foreclosure, on paying to the purchaser a proportion of the
  price paid equal to the proportion his stock bears to the whole stock of
  the company, have the same relative amount of stock or interest in the
  company, its road, franchises and other property, etc., was repealed by
  the act of 1854, amending the general railroad act (Chap. 282, Laws of
  1854), and by the act of 1874 (Chap. 430, Laws of 1874), " to facilitate the
  reorganization of railroads sold under mortgages," etc.

(Argued March 10, 1881; decided March 22, 1881.)

APPEAL from judgment of the General Term of the Supreme Court, in the fourth judicial department, entered upon an order made April 22, 1880, which affirmed a judgment in favor of defendants, entered upon a decision of the court on trial, at Special Term.

The nature of the action and the material facts are stated in the opinion.

*Daniel Pratt* for appellants. The act of 1853, chap. 502, was constitutional. (*Bk. of Chenango* v. *Brown*, 26 N. Y. 447; *Berley* v. *Rampacher*, 5 Duer, 183; *Calkins* v. *Calkins*, 3 Barb. 305.) The obligation of an existing contract cannot be meddled with, but the remedy to enforce it is always a matter of regulation. (*Ogden* v. *Sanders*, 12 Wheat. 213; *Danks* v. *Quackenbush*, 1 Com. 129; *Moss* v. *Goold*, 11 N. Y. 281; *Becker* v. *Becker*, 27 Barb. 497.) Statutes must be construed prospectively unless there be express words giving them a retrospective application. (*Jackson* v. *Sprague*, 12 Johns. 169; *Harkley* v. *Sprague*, 10 Wend. 114; *Palmer* v. *Conley*, 4 Den. 374; 2 Com. 182.) The act of 1853 has never been repealed. (*McCarter* v. *Orphan Asylum Soc.*, 9 Cow. 437; *Bowen* v. *Lease*, 5 Hill, 221.) All statutes in *pari materia* are to be taken together as if they were one law. (Smith's Com. 647; *People* v. *Utica Ins. Co.*, 15 Johns. 358; 1 Doug. 36; *Rogers* v. *Bradshaw*, 20 Johns. 735, 743.) In any statute in regard to railroads, or in regard to any other incorporation where the words "capital stock" or "the whole capital stock" are used, they refer to the capital stock fixed by the charter or the articles of organization. (Laws of 1850, chap. 40; 2 R. S. [6th ed.] 516; 2 R. S. [Banks' ed.] 499; 1 R. S. [6th ed.] 931; 2 R. S. [5th ed.] 534, §§ 45, 47.)

*B. W. Huntington* for respondents. The act of 1853, chapter 502, has been repealed by subsequent repugnant legislation, and is obsolete. (Chap. 282, Laws of 1854; 3 Edm. 610; chap. 444, Laws of 1857; 3 Edm. 650; *Seymour* v. *Canandaigua, etc.*, 25 Barb. 300; *Coe* v. *Pennock*, 8 Am.

L. Reg. 27; 2 Redf. & B. R'way Cases, 667; chap. 430, Laws of 1874; chap. 446, Laws of 1876; 1 Kent, 464; *Stief* v. *Hart*, 1 N. Y. 20; *Howland* v. *Meyer*, 3 id. 290; *Wood* v. *Wellington*, 17 id. 297; *Com'rs Knox Co.* v. *McComb*, 19 Ohio [N. S.], 320, 341.)

·DANFORTH, J.   Prior to the 1st day of March, 1873, "The Sodus Bay and Corning Railroad Company" was organized under the laws of this State, and on that day executed to the defendants, "The Farmers' Loan and ·Trust Company," a mortgage upon all its property and franchises for the purpose of securing the payment of certain bonds by it executed and in the mortgage described.   Upon default made, an action of foreclosure of the mortgage was commenced and prosecuted to judgment.   The mortgaged property was sold under it on the 23d day of June, 1876, to the defendant, Munson, and after confirmation by the court was conveyed to him.   The plaintiffs held one share of the capital stock of said company, of the par value of $100, and having, as they claim, complied with the provisions of section 2 of chapter 502 of the Laws of 1853, entitled "An act to authorize stockholders of railroad and plankroad companies to make payments upon mortgages in process of foreclosure against such companies, and thereupon to become interested in said mortgages," brought this suit to enforce a cause of action alleged to have accrued to them by reason of the defendants' refusal to accede to their demands.

The purpose of the first section of this act is very well explained by the title, but the plaintiffs have no concern with that, for, as we have already seen, before they sought the benefit of the act the mortgage was extinguished and title acquired by Munson as purchaser.   The second section declares in substance that any stockholder of such company shall, on paying within six months after the sale under such foreclosure, to the purchaser thereunder a sum equal to such proportion of the price paid by him as such stockholder's stock shall bear to the whole capital stock of said company, "be entitled to have the same relative amount of stock or interest in said rail-

road company and its road, franchises and other property." The object of these provisions was doubtless to enable each stockholder to continue his interest in the corporate property, by contributing to the purchaser a certain proportion of the sum paid, and so becoming with him tenants in common of the estate. The directions of the section are very inadequate, and could hardly afford to any one indemnity for the loss sustained by the extinction of the corporation of which he had been a member. It was probably the result of afterthought, and added to the first section by amendment. Although it speaks of stock or interest, there could be, after foreclosure and sale, no right of property to be so represented, and the one contributing under its permission would become part owner or partner with the purchaser; a relation which, formed under such circumstances, could hardly be profitable or productive of any good result to either. But in 1854 (Laws of 1854, chap. 282) a law was passed amending the general railroad act of 1850 (Laws of 1850, chap. 140), by declaring that whenever the purchaser of the real estate, track and fixtures of any railroad corporation which had theretofore been sold, or might be thereafter sold, by virtue of any mortgage executed by such corporation, shall acquire title to the same in the manner prescribed by law, such purchaser may associate with him any number of persons, and make and file articles of association, as prescribed by the act of 1850 (chap. 140), and such "purchaser or purchasers and their associates shall thereupon be a corporation, with all the powers, privileges and franchises, and be subject to all the provisions of this act." If we were to go no further, it would seem that this statute was entirely repugnant to that of 1853. Under it the purchaser may select his own associates, and without delay form a corporation, prescribe its capital, and by its directors open books for subscriptions thereto, exact payment of ten per cent in money at the time of subscribing, and require the residue to be paid "in such manner and in such installments as they may deem proper." (Laws of 1850, chap. 140, §§ 4, 7.) By the act of 1853 a period of six months must intervene within which the purchaser could in no way sell or dispose of

the property, lest he should be unprepared to convey to some stockholder in the old company a proportion thereof, nor could he use or enjoy the property except at the risk of being called to account by the same person. By the act of 1853 he must keep the property on hand. By the act of 1854 he may, by new arrangements, convey the title to a new corporation and convert the property into stock. But if the act of 1853 indicated the policy of the legislature toward the stockholder, a still greater change is manifest by the act of 1874 (Laws of 1874, chap. 430), designed, as its title says, "to facilitate the reorganization of railroads sold under mortgage, and providing for the formation of new companies in such cases." The first section is substantially like the amendment of 1854 already considered, and declares that the "new company" formed by the purchaser and his associates shall become and be a body politic and corporate, and be vested with all the rights, privileges and franchises, "which at the time of such sale belonged to or were vested in the corporation formerly owning the property so sold." Now this act cannot be construed so as to be consistent with the continuance of the right claimed under section 2 of the act of 1853. The prayer of the complaint is the interpretation put upon it by the plaintiffs, and if the act is in force, is the correct interpretation. They ask that "they be adjudged the owners of and vested with the title in one fifteenth-thousandth part of said property and franchises so purchased by the said Edgar Munson upon the said foreclosure sale, and that he be directed to convey to them that interest by a sufficient deed of conveyance." Then follows the description of all the property of the old company, as that in which they claim a right to have an interest. Under the act of 1874, this very property, and all of it as it was at the time of the sale, is for the new company. Under the act of 1853 it is liable to be carved up and transferred in undivided parts to every one of the old stockholders who may comply with the terms of that act. They are, I think, contrary to the enactment of 1874, and, therefore, by necessary implication repealed by it. This conclusion is strengthened by subsequent

provisions of the same law (1874, *supra*). The second and following sections declare that when the person organizing the new corporation shall have acquired title to the property upon such sale, pursuant to any plan or agreement for the readjustment of the interests therein of (among others) the stockholders of the company, " the property and franchises whereof have been sold," every such stockholder shall have the right to assent to the plan of readjustment, "at any time within six months after the organization of such new company, and by complying with the terms and conditions of such plan become entitled to his *pro rata* benefits therein, according to its terms." These affirmative provisions, as well as those above referred to in the acts of 1854 and 1874, clearly "import a negative" to the terms of the earlier act of 1853, on which alone the plaintiffs rely. They cannot coexist with the later acts, for if carried into effect they would be productive not merely of inconvenience, but prevent the operation of those acts. The right of the purchaser, as declared therein (Laws of 1854, 1874, *supra*) to the unrestrained control of the whole property, by transferring it at once to a corporation formed for its management, is absolute and unconditional. It might be exercised on the day of the foreclosure sale, and whensoever exercised, it ceases to be his property or under his control. It becomes at once the property of the new corporation and under its control. Nothing could be more repugnant to or inconsistent with the right given to a stockholder in the old company by the act of 1853 (*supra*). That right is not, as the appellants claim, "to have stock in the new company" in any proportion. The statute of 1853 does not contemplate the formation of a new company. No obligation is imposed upon the purchaser to form or assist in forming one. No provision is made for it. Upon the foreclosure sale the purchaser takes the property to do with as he chooses, as he might deal with land or chattels, subject only to the right given to the stockholder by section 2 of the act of 1853 (*supra*) to participate in the purchase upon the terms and within the time therein mentioned. That right

must be deemed taken away by the power of disposition conferred upon the purchaser by the above acts; for the liability to convey to the stockholders of the company an interest in the property purchased cannot coexist with the power to convert the whole for other purposes and to other parties. Again the act of 1874 (*supra*) secures to the stockholder in the old company a right to participate in the benefits of reorganization in one event only — when the title is acquired to the railroad property and franchises pursuant to some plan or agreement for the readjustment of the respective interests therein of mortgage creditors and stockholders in the old company. This provision also is inconsistent with the right embraced in the second section of the act of 1853 (*supra*). It seems to us that these acts were intended by the legislature to prescribe the rule applicable to the stockholder in a railroad company and the purchaser upon foreclosure of its property and franchises; that they are repugnant to the provisions of the act of 1853 upon the same subject, and therefore repeal them, according to the maxim that "every affirmative statute is a repeal, by implication, of a precedent affirmative statute, so far as it is contrary thereto." (Bac. Abr., Stat. D.)

We think, therefore, the provisions of the act of 1853 (§ 2, chap. 502), on which the plaintiffs rely, were not in force at the time of the sale under the foreclosure, and that the plaintiffs acquired no cause of action against the defendants.

This conclusion renders it unnecessary to consider the other questions argued, and requires that the judgment appealed from should be affirmed.

All concur, except RAPALLO, J., absent, and FINCH, J., not voting; FOLGER, Ch. J., concurs in result.

Judgment affirmed.