THOMAS H. UNCKLES, Appellant, v. ROMULUS R. COLGATE et al.,
Respondents.

1. EQUITY — PARTICIPATION IN WRONG.  Where a party comes into a
court of equity seeking redress for a wrong, he must be innocent of any
participation therein, or, if appearing to be a participant, he must be able
to sustain his appeal to the court by showing that, nevertheless, there is a
justice or some element of public policy in his demand which outweighs
the fact of his participation.

2. EQUITY — AFFIRMANCE OF UNLAWFUL CONTRACT.  A court of
equity will not determine the respective rights and interests of persons
arising out of an unlawful agreement, but will leave the parties where it
finds them in all cases where the action is in affirmance of such an
agreement.

3. ILLEGAL TRUST — ACTION BY HOLDER OF CERTIFICATES.  One who,
subsequently to the formation of an illegal "trust," acquires its certifi-
cates, containing a stipulation binding him as their holder to all the terms
of the agreement on which the trust was formed, thereby becomes a volun-
tary participant in such unlawful agreement, and cannot, as the holder of
such certificates, maintain an action in equity to secure, through an
accounting and distribution by trustees engaged in perfecting a legal
re-organization, profits and assets alleged to have been acquired by the
trust under the agreement.  A complaint which presents this state of
facts discloses an action in affirmance of an unlawful agreement, although
it may allege disaffirmance.

4. DISAFFIRMANCE OF CONTRACT.  The disaffirmance of an illegal con-
tract implies action on the part of a contracting party, looking to with-
drawal from the guilty scheme, a repudiation of all share in it and a
return of the property put into it.

5. EXECUTED AGREEMENT — FORMATION OF TRUST.  An agreement
for the formation of an industrial "trust" is to be deemed executed when
the proposed combination of business concerns has been perfected, and no
act remains to be done by the parties to the agreement to make it in
force.

6. ILLEGAL TRUST AGREEMENT.  The illegality of an agreement for the
formation of an illegal trust taints the whole contract; and, therefore,
equity will leave the parties to such agreement where it finds them,
whether the agreement is executed or but partially performed.

7. FAILURE OF TRUST PLAN — IMPLIED VALID AGREEMENT.  Where a
trust plan fails through illegality, the law will not imply some valid agree-
ment between the trustees and one who has become a participant in the
unlawful scheme, which the latter can assert and ask a court of equity to
enforce, the vice of illegality following the parties through their subse-
quent dealings and controversies.

Reported below, 72 Hun, 119.

(Argued January 28, 1896; decided February 18, 1896.)

Appeal from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made October 13, 1893, which affirmed a judgment in favor of defendants entered upon a decision of the court at Special Term sustaining a demurrer to the complaint.

The nature of the action and the facts, so far as material, are stated in the opinion.

*A. B. Porter* for appellant. On demurrer all reasonable intendments will be indulged in in support of the pleading demurred to. (*Marie* v. *Garrison*, 83 N. Y. 14, 23 ; *Lorillard* v. *Clyde*, 86 N. Y. 384, 385, 389 ; *Wetmore* v. *Porter*, 92 N. Y. 76 ; *Emery* v. *Pease*, 20 N. Y. 62, 64, 65 ; *Beck* v. *Allison*, 56 N. Y. 366, 372, 373 ; *Mott* v. *Oppenheimer*, 135 N. Y. 312 ; *Mitchell* v. *Thorne*, 134 N. Y. 536, 542 ; *Erickson* v. *Quinn*, 3 Hun, 349 ; *People* v. *N. R. S. R. Co.*, 54 Hun, 354 ; 121 N. Y. 582 ; *C., etc., S. Co.* v. *Knowlton*, 103 U. S. 347 ; *Taylor* v. *Bowers*, L. R. [1 Q. B. Div.] 291 ; *Gross* v. *Moore*, 68 Hun, 413 ; *Cameron* v. *Havemeyer*, 25 Abb. [N. C.] 438.) Neither law nor equity should be the instrument or means of vesting irrevocably in wrongdoers the title or possession of property illegally obtained by them. (*Mitchell* v. *Thorne*, 134 N. Y. 536, 542 ; *Emery* v. *Pease*, 20 N. Y. 62, 64 ; *Wright* v. *Wright*, 54 N. Y. 437 ; *Beck* v. *Allison*, 56 N. Y. 366, 372, 373 ; *Truscott* v. *King*, 6 N. Y. 147, 165 ; *Town of Mentz* v. *Cook*, 108 N. Y. 504, 507, 508.) A party to an illegal transaction or agreement may protect his rights by suing in disaffirmance of such agreement. (*Woodworth* v. *Bennett*, 43 N. Y. 278 ; *Cameron* v. *Havemeyer*, 25 Abb. [N. C.] 448 ; *Clinton* v. *Myers*, 46 N. Y. 511 ; *Canaday* v. *Stiger*, 55 N. Y. 452 ; *Rice* v. *Rockefeller*, 134 N. Y. 174 ; *Paine* v. *Chandler*, 134 N. Y. 385.)

*Elihu Root* for respondents. It appears affirmatively in this record that the plaintiff is not seeking to protect the interests of the class which he claims to represent, or, in good faith, to protect any right whatever. (*Dannmeyer* v. *Coleman*, 11 Fed.

Rep. 97.) The trust agreement described in the complaint being, upon the plaintiff's own averments, illegal, the courts of this state will not lend their aid to enforce any right arising under it. (*Judd* v. *Harrington*, 139 N. Y. 105 ; *Leonard* v. *Poole*, 114 N. Y. 371; *Arnot* v. *P., etc., C. Co.*, 68 N. Y. 558 ; *Knowlton* v. *C. & E. S. Co.*, 57 N. Y. 518 ; *Woodworth* v. *Bennett*, 43 N. Y. 273 ; *Peck* v. *Burr*, 10 N. Y. 294.) This is not an action in disaffirmance of an unlawful contract which remains executory, or to recover back property delivered or money paid upon such a disaffirmance. (*Leonard* v. *Poole*, 114 N. Y. 379.) The plaintiff is mistaken in supposing that there is what he calls " a trust at common law and in equity " resulting from the illegality of the agreement under which the defendants acquired the property described in the complaint. (*Arnot* v. *P., etc., C. Co.*, 68 N. Y. 558, 568 ; *Woodworth* v. *Bennett*, 43 N. Y. 276.) Even if the plaintiff was suing here to recover back some money which he had paid, or property which he had delivered under a contract still executory and which he disaffirms, two established rules of law would stand in his way : one, that no such recovery can be had, when the contract is *malum in se*, as distinguished from *malum prohibitum ;* and the other, that no such recovery can be had by a plaintiff who is in *pari delicto* with the parties from whom he seeks relief. (*Tracy* v. *Talmage*, 14 N. Y. 162; *Duval* v. *Wellman*, 124 N. Y. 156 ; 2 Wharton's Crim. Law, § 1369 ; 1 Russell Crim. Law, 168; 2 Bishop's Crim. Law, § 231; 4 Black. Comm. 158, 159 ; *Rex* v. *De Berenger*, 3 M. & S. 67 ; *Rex* v. *Hilber*, 2 Chitty, 163 ; *Rex* v. *Waddington*, 1 East, 143, 167 ; *Rex* v. *Sterling*, 1 Keble, 650 ; *Rex* v. *Norris*, 2 Kenyon, 300 ; *Anonymous*, 12 Modern, 248 ; *People* v. *Melvin*, 2 Wheeler's Cr. Cas. 262 ; *Com.* v. *Carlisle*, Brightly [Pa.], 36 ; *Raymond* v. *Leavitt*, 46 Mich. 446 ; *M. R. C. Co.* v. *B. C. Co.*, 68 Penn. St. 187; *S. S. Co.* v. *McGregor*, L. R. [23 Q. B. D.] 598 ; *People* v. *N. R. S. R. Co.*, 58 Hun, 354, 380 ; *Leonard* v. *Poole*, 114 N. Y. 371 ; *People* v. *Sheldon*, 139 N. Y. 251; Penal Code, § 168, sub. 6 ; 54 Hun, 354.)

GRAY, J.  The complainant, as a holder of "certificates of trust" issued by the National Lead Trust, seeks by this action to obtain a judgment which shall provide for the winding up of the affairs of the trust, for an accounting by the defendants, who were the trustees under the trust agreement, for the appointment of a receiver and for a distribution through the receiver of all moneys and of the proceeds of property which came into the defendants' hands and for other incidental equitable relief.  The complaint was demurred to and the question is whether, admitting all its averments to be true, a cause of action is made out which the court will recognize. The action being brought on the equity side of the court, it is, of course, essential that the plaintiff shall show facts which make out a case where the intervention of equity is both necessary and warranted.  For while a court of equity exercises a discretion regulated upon judicial grounds, it is not compelled, and it will refuse, to aid one whose appeal to it offends its conscience.  The party aggrieved and remediless at law must come into court with clean hands.  He must be innocent of any participation in a wrong, as to which he seeks equitable intervention; or, if appearing to be a participant, he must be able to sustain his appeal to the court by showing that, nevertheless, there is a justice or some element of public policy in his demand, which outweighs the fact of his participation.  Is that the case here?  The court below has held adversely to the plaintiff; because the action was an effort to have his rights determined under the provisions of an agreement shown, and alleged, to be illegal.

An examination of the complaint shows that, in October, 1887, an agreement was entered into for the formation of a lead trust; which should combine the interests of manufacturers and dealers in lead and its products throughout the country and which was of like nature with an agreement which was condemned in this court as unlawful, for constituting a partnership between corporations, whose stock should be deposited under it, and a surrender of the corporate management to directors, selected not, as required by the law,

by the stockholders, but by the board of trustees under the agreement. (*People* v. *North River Sugar Refining Company*, 121 N. Y. 582). The lead trust was capitalized at $89,447,600, or the equivalent of 894,476 shares, represented by "certificates of trust," and in May, 1889, the plaintiff became the holder of certificates representing, in par value, 700 shares in the trust. His interest is, therefore, only about one-twelfth of one per cent and it does not appear that any other holder of trust certificates has joined with him, or is in sympathy with him. It is alleged that the property, assets and interests, which were held by the trustees, amounted to $25,000,000. In 1891 these defendants were elected and became the trustees under the lead trust agreement and it is alleged that they had accumulated and held a large amount of money, which, by the end of the year 1891, amounted to over $3,000,000 and as to which they have never accounted. The plaintiff alleges that he brings this action "in behalf of himself as such holder of certificates and all others in like situation;" and the reason given is that the defendants held "divers moneys and other property which had come into their hands under and by virtue of said agreement and the carrying out of the scheme contemplated involved therein and thereby, and for which they have not duly accounted to the certificate holders, including this plaintiff * . * * and for which they should account in the proportion which the amount of the certificates held by them respectively bear to the amount of the whole number of certificates issued." It also appears that, in October, 1891, this plaintiff brought an action to restrain the trustees of the lead trust from disposing of the property in their hands, or under their control as such trustees, in pursuance of a certain scheme or plan for the dissolution of the trust and its merger into a new corporation, which had been adopted at a meeting of the association of certificate holders, and as to which these defendants were appointed "re-organizing trustees." The plaintiff alleged his non-assent to the scheme and his opposition to it, as being "illegal and in violation of the provisions, etc., of the

trust agreement and of his rights and privileges as a member of said association" and, "that if  *  *  *  carried out the result will be the dissolution and destruction of said trust, etc." A motion in that action for a preliminary injunction was denied, upon the ground that the scheme of re-organization did not appear to be unlawful in itself and that the plaintiff was not entitled to insist that a trust agreement should be carried out or performed which was illegal. Thereupon that action was discontinued. A re-organization of the Lead Trust interests in the form of a legal corporation was perfected and the National Lead Company was organized, to which the trustees transferred the assets and properties, etc., in their hands in December, 1891. In July, 1892, the present action was brought.

It would seem, from a consideration of this complaint, that the plaintiff, being defeated in his prior attempt to compel the trustees specifically to perform the trust agreement and to refrain from carrying out the re-organization plan, was now endeavoring to compel them to account for their acts while managing the affairs of the Trust and upon the theory that, the trust agreement having failed for illegality, they became custodians or trustees at common law and in equity of the properties coming into their hands. It is, of course, apparent that the obstacle, in the way of granting to the plaintiff the equitable relief he demands, is that his complaint shows that he became a participant in an enterprise or scheme, which was illegal, as being contrary to the statute and against public policy under the decisions, and which he avers to have been " a monopoly and inimical to the best interests of the public at large." He avers that "said agreement was illegal and void and against public policy;" but yet insists that, nevertheless, a court of equity should aid him in winding up the affairs of the trust and in compelling an accounting by its trustees. It would be a somewhat unusual spectacle for a court of equity to be occupying itself with investigating the illegal transactions of parties and with adjusting the differences between them, and a somewhat similar view was taken

as recently as in the case of *Leonard* v. *Poole*, (114 N. Y. 371). Mr. Justice Story, in his work on Equity Jurisprudence (§ 298), observed: "In general * * * where parties are concerned in illegal agreements or other transactions, whether they are *mala prohibita* or *mala in se*, courts of equity following the rule of law, as to participators in a common crime, will not at present interpose to grant any relief." In a note to the section, he said, with reference to a previously existing fluctuation of opinion in the courts on the subject, that, "the modern doctrine has adopted a more severely just, and probably politic and moral rule, which is, to leave the parties where it finds them, giving no relief and no countenance to claims of this sort." This equitable rule applies to all cases where the action, or claim, is in affirmance of the illegal contract. It is sometimes deemed inapplicable, as where the action proceeds in disaffirmance of such a contract, and, instead of endeavoring to enforce it, presumes it to be void, and seeks to prevent a defendant from retaining some benefit derived from an unlawful act. (2 Comyn on Contracts, 109.) In *Walker* v. *Chapman* (Lofft, 342), Lord Mansfield observed: "There is a great difference where a party comes to overturn an illegal contract, and to be relieved against it. He shall not be relieved if he comes to take the benefit of an illegal contract; there he never shall be relieved, because, to relieve him, the court must affirm the contract."

At the outset, it is to be observed that this is not a case where it appears that the defendants are parties who seek to derive any advantage from the illegal agreement, or from their unlawful acts; a circumstance which, under some of the cases, might have justified the court in giving relief. On the contrary, they have endeavored to execute the wishes of the great body of certificate holders and the plaintiff seeks to set at naught acts on their part which were, in fact, in aid of a purpose to organize legally. The plaintiff has defined his position very clearly in his complaint. He is not endeavoring to recover back stocks or property surrendered, or paid out, under the agreement; but, on behalf of a class of certificate

holders of whom he alleges himself to be one, he asks for an accounting and for a distribution by the defendants, as the trustees under the agreement, as to the moneys and properties which had accumulated in their hands; and this, notwithstanding the fact that, in compliance with the resolves of the holders of the trust certificates, (and for aught that is alleged we may assume that all approved), the trustees have transferred the property in their hands to the new corporation. This action cannot, with any propriety, be regarded as in disaffirmance of the agreement. The plaintiff was not a party to the agreement itself and disaffirmance implies action on the part of a contracting party, looking to withdrawal from the guilty scheme, a repudiation of all share in it and a return of the property put into it. His own transaction, assuming it to have been a purchase of the certificates in the market, was an act by which he bought an interest in the scheme involved in the executed agreement and he now, in effect, seeks to secure, through an accounting and distribution, the profits alleged to have been made.

We are not called-upon to decide in this case what should be the just rule, if a stockholder and party to the original agreement were to ask for an accounting by his trustees. Although such an agreement as the one in question may be illegal, for being against public policy, because aiming at creating a monopoly in a necessary product, and, hence, subject to the condemnation of the law, when moved against by the public authorities, it might possibly be that a party would have the right to come seasonably into a court of equity and, disaffirming the agreement, ask for a restoration of his property; or that the trustees should account and distribute the accumulated property in their hands as equity might deem just and feasible. In such a case there might exist a *locus pœnitentiæ* for the party. That, however, is by no means this case and we defer the expression of any opinion, as to what should be done in such a case, to the time when it arises. The plaintiff here, voluntarily, became a participant in a scheme, which he alleges to have been illegal, by acquir-

ing the trust certificates subsequently to the formation of
the trust. In equity there might be a distinction, of some
substance, between his case and the other case suggested.
In the former, property would have been surrendered to
be administered in the owner's behalf and his certificate
of trust would represent it and his interest in the trust
property. In the present case, the plaintiff has not the
excuse of the stockholder; who, influenced to effect an
increase of corporate business and of consequent profits, by
consenting to the plausible scheme of a combination of rival
interests, in good faith, parts with his property to the trustees
under the provisions of an agreement and entrusts them with
its control. What interest has the plaintiff, other than that
which his certificate suggests; namely, a proportionate
interest as a beneficiary in the trust scheme? He could not
well lay claim to the ownership of any stocks or property
originally surrendered to the trustees. He acquired cer-
tificates, which represented the amount of his interest in the
trust and which contained a stipulation binding him as their
holder to all the terms of the trust agreement. He thus,
voluntarily, made himself a party to a scheme under an exe-
cuted agreement, which he alleges to have been illegal and
how can he now say that it is one which he can disaffirm and
as to which, upon the plea of disaffirming, he can ask a court
of equity to intervene and to compel in his favor an account-
ing and distribution by the trustees? I think the court might
well apply the principle which controls in cases where parties
are in *pari delicto*, and hold that it would not, and that no
public policy required it to, interfere. The plaintiff's demand
would be met with this answer; either you are bound,
through your certificates, by the terms of the trust agree-
ment, in which case it would require a demand representing
sixty-seven per cent in value of the holders of the trust certifi-
cates to compel the trustees to do what you ask; or, as you
voluntarily chose to acquire an interest under an agreement,
which you admit to have been illegal, and thus became a par-
ticipant in an unlawful scheme, equity will leave you where it

68

finds you and will not grant you any relief. The situation is of your own creation and you have not an excuse to offer, which appeals to the conscience of the court.

It is very clear that the plaintiff is seeking the aid of the court to enforce certain rights, which he deems to have accrued to him by virtue of, or as the result of, the trust agreement, and although his contention is that his rights are independent of, and unaffected by the illegality of the agreement, he is claiming exactly what the contract was intended to give. As it was observed in *Peck* v. *Burr* (10 N. Y. at p. 298), " the plaintiff seeks to have the full benefit of the contract, though in a form of action a little different." I do not see how the court could grant to plaintiff the relief he demands without recognizing the agreement, and I may use the words of ·Sir WILLIAM GRANT, Master of the Rolls, in *Thomson* v. *Thomson* (7 Ves. 470), who, in discussing the right of the plaintiff to recover from a fund, observed: " You have no claim to this money except through the medium of an illegal agreement; which, according to the determinations, you cannot support. * * * Here you cannot stir a step but through that illegal agreement; and it is impossible for the court to enforce it. I must, therefore, dismiss the bill."

Assuming, as the plaintiff argues, that we could view this agreement as, in a sense, executory ; because some years remain of the period it was to cover, how is the question affected ? The purpose of the agreement was effected when the combination and control of the various lead interests were secured through its execution. But it was not executory. The plan contemplated was carried out and a combination of the several concerns, interested in manufacturing and dealing in lead products, was perfected. It is, indeed, alleged in the complaint that the business was carried on by the trustees, and that they accumulated moneys and property, for which they should have accounted. No act remained to be done by the parties to the agreement to make it in force. As an executed agreement it was open to others to come ·in under its terms. Even if the agreement were to be regarded as but partially performed, it

would not help out the plaintiff's cause of action. For the illegality tainted the whole contract, and, therefore, the court would leave the parties where it found them. (*Knowlton* v. *Congress, etc., Spring Co.*, 57 N. Y. 518 ; *Arnot* v. *Pittston, etc., Co.*, 68 id. 558.)

The plaintiff argues that the defendants, upon the failure of the trust plan, became, by operation of law, trustees or custodians of the property for his benefit and that of all purchasers of trust certificates, as beneficial owners of the original stocks and bonds which had been delivered to the trustees upon the formation of the trust. Such a contention does not commend itself. The plaintiff is not entitled to the aid of a court of equity, in the investigation of the illegal transactions, whether sought for upon the one or the other theory. The obligation, which plaintiff claims the defendants to be under, springs out of the trust agreement. If that agreement was illegal and created no obligation which the court would recognize or enforce, it cannot be that the law would, nevertheless, imply some valid agreement between the trustees and the plaintiff, which he could assert and ask a court of equity to enforce in his behalf. The plaintiff's relation to the defendants rests upon his having become a party to the trust agreement and the vice which inhered in that relation follows the parties through their subsequent dealings and controversies.

From a careful consideration of the complaint, I think that the judgment below, sustaining the defendants' demurrer to the complaint, was correct and that it should be affirmed, with costs.

All concur (ANDREWS, Ch. J., in result).

Judgment affirmed.