EDGAR MUNSON, Respondent and Appellant, *v.* GEORGE J. MAGEE, Appellant and Respondent, Impleaded with Others.

*Agreement by a bondholding committee to buy in a railroad under foreclosure and convey it is not void as stifling competition at the sale — novation sustained by a consideration valid, when given, but which subsequently fails, and by laches.*

A contract of August 13, 1875, by the terms of which a committee, representing practically all the holders of the bonds of an insolvent railroad company, agrees to foreclose the mortgage securing the bonds, buy in the property and convey it to a large operator in coal or to a company to be organized by him, he agreeing to pay the bondholders fifty per cent of their holdings by first mortgage bonds of the new road, and covenanting to secure it sufficient coal freight to pay the interest upon and to form a sinking fund for the payment of the new bonds, is a lawful attempt upon the part of the bondholders to protect their own interest, and cannot, in the absence of any complaint by the stockholders, be condemned as an agreement intended to stifle competition at the foreclosure sale.

The coal operator in such case, after forming the new railroad corporation, assigned the contract to it, and it, by a vote of its directors, duly assumed all his liabilities thereunder, including that of paying in its first mortgage bonds for the property foreclosed, except as to the procuring of the contract for freight tonnage, which the coal operator agreed to procure. He subsequently resigned his existing directorship in the new corporation and became the contractor for the construction of its road on a new line, other than (as it had been agreed in

the contract of August 13, 1875) upon the property of the insolvent company which it had contracted to purchase.

*Held*, that the president of and a bondholder in the road foreclosed, a member of the bondholders' committee, and also the president and a director in the new corporation, who had assented to and voted for the latter's assumption of the liabilities of the coal operator under the agreement of August 13, 1875, but had voted against the change of line of the new corporation, could not, after having been defeated in an action brought by him to compel the new corporation, upon tender of a deed of the property foreclosed, to pay him therefor by its first mortgage bonds, for the reason, as declared by the court, that he had violated his duty to the new corporation when he voted to make it assume the obligations of the coal operator to himself, change his position and claim that the new corporation was not bound by the contract of August 13, 1875, and enforce an action against the coal operator for damages alleged to have resulted from its breach;

That the coal operator, having fulfilled his promise to the new corporation to furnish it coal traffic sufficient for the payment of the interest upon its first mortgage bonds and for a sinking fund, a valid novation was made out, and the new corporation must be deemed to have been substituted as the party liable under the contract of August 13, 1875, and the coal operator to have been relieved upon a consideration (the procuring of the coal tonnage contracts) which, although it subsequently failed as to the plaintiff, was valid when the latter accepted it, and that, in view of the long-continued assumption of the validity of the release by the plaintiff, whereby the coal operator had been induced, as contractor for the construction of the new road, to make large expenditures and contracts which he would not otherwise have made, the plaintiff was estopped from claiming that the original contract should be reinstated.

CROSS-APPEALS by the plaintiff, Edgar Munson, from the whole, and by the defendant, George J. Magee, from a portion, of a judgment of the Supreme Court in favor of the plaintiff for $152,057.96, entered in the office of the clerk of the county of Schuyler on the 10th day of October, 1896, upon the decision of the court rendered after a trial at the Schuyler Special Term.

The action was to recover damages for a breach of a contract under seal, of which the following is a copy:

"WHEREAS, Edgar Munson, of Williamsport, Pa., George M. Case, of Fulton, N. Y., and John E. Gowen, of New York city, are the owners and holders of the first mortgage bonds of the Sodus Bay, Corning & New York Railroad Company, and, as a committee, represent the holders of other bonds of said company now issued, and including bonds to be issued to John E. Gowen, under

his contract for constructing said road from Savona to Penn Yan, N. Y., amounting in all to two hundred and forty-one thousand dollars of .principal. Said bonds include all the bonds of said company except sixteen thousand dollars of bonds in hands of Ex-treasurer D. W. Parshall ; and

" WHEREAS, default has been made in the payment of interest upon said bonds, and the said committee, for themselves and other bondholders, are desirous of securing a change of the investment to bonds of another railroad company proposed to be organized for the construction of a railroad from the vicinity of Corning, N. Y., to Geneva, N. Y., and whereas, George J. Magee, of Watkins, N. Y., represents the persons and interest proposing to organize said railroad company,

" Now this indenture, made this 13th day of August, 1875, between said Edgar Munson, George M. Case and John E. Gowen, party of the first part and George J. Magee, party of the second part, witnesseth :

" *First.* That the party of the first part will proceed at once to secure the foreclosure of the mortgage securing said bonds and obtain sale of all the property, rights of way, franchises and interests of said Sodus Bay, Corning & New York Railroad Company and its successor, the Sodus Bay & Corning Railroad Company, covered by said mortgage and sold under such foreclosure or judgment sale ; that they will purchase said property on such sale or sales, and convey the same to the party of the second part, or to the railroad company proposed to be organized as aforesaid.

" *Second.* That the party of the second part will deliver, or cause to be delivered, to the party of the first part first mortgage bonds of said proposed railway company in payment for said railroad property, rights of way and franchises to be purchased as aforesaid, at the rates hereinafter set forth, to wit, that the property, rights of way, franchises and interests so to be purchased by the party of the first part shall be transferred and conveyed by them to the party of the second part for the consideration of fifty per cent of the principal of the said bonds so held and represented by the party of the first part, together with the interest accrued and unpaid upon said bonds, and which consideration shall be paid in first mortgage bonds of said proposed railroad company at par.

"*Third.* Said first mortgage bonds shall be parts of an issue of one million dollars of first mortgage bonds of said proposed railway company, secured by a first mortgage upon railroad franchises and property of said proposed railway company, to a trustee approved by the party of the first part, dated not later than January 1, 1876, and payable not more than thirty years from the date thereof, with interest at the rate of seven per cent per annum, payable semi-annually, except that the interest for the first year shall be payable at the end of that year, together with sinking fund of one per cent per annum, to apply upon principal when due.

"*Fourth.* It is understood and agreed that the proposed railway company, or the party of the second part, shall procure from one or more coal companies doing business in Tioga county, Pa., a contract or contracts pledging a sufficient amount of coal freight each year to pay the interest and provide sinking fund, thereby assuring the payment of said bonds and interest, and enhancing their value.

"*Fifth.* Sufficient bonds shall be issued as aforesaid to carry out this agreement, whether the whole issue of one million dollars shall be made or not, or whether such issue shall be postponed or not."

It appears from the findings of the trial court and from the evidence that, at the date of the contract, the plaintiff and his associates, Case and Gowen, who are made defendants in this action because of their refusal to be plaintiffs, held first mortgage bonds substantially as stated in the contract; that the Sodus Bay, Corning and New York Railroad Company had, prior thereto, pursuant to its corporate charter, undertaken the construction of. a railroad from Savona, in the county of Steuben, to Sodus Bay, in the county of Wayne, had expended about $250,000 upon the construction of the railroad, had exhausted its resources, and become hopelessly insolvent and unable to proceed further in its construction; that the property it had thus acquired and created was of comparatively little value, unless some plan could be devised to complete the railroad; that the plaintiff was a director and the president of the company; that George J. Magee was largely interested in coal corporations engaged in mining coal in Tioga county, Pennsylvania, and desirous of securing facilities for the transportation of coal from the mines to the line of the New York Central railroad, and the parties sup-

posed that if this railroad, when completed, could secure the carrying of the coal, it would add to its value.

August 25, 1875, in pursuance of the contract, Magee and the plaintiff, with others, organized the Syracuse, Geneva and Corning Railroad Company, both signing the articles of association, and being named therein as directors. On the same day the plaintiff was elected president of the new company.

August 31, 1875, the board of directors of the Syracuse, Geneva and Corning Railroad Company adopted the following resolution, both plaintiff and Magee voting in favor thereof:

"*Resolved.* That the contract entered into Aug. 13th, 1875, by George J. Magee, E. Munson, Geo. M. Case and John E. Gowen, be and the same is hereby assumed by this company on the part of said Magee, and that this company will carry out the agreement of said Magee in the said contract set forth, excepting as to the procuring of contracts for freight and tonnage therein mentioned, which said Magee is to procure."

Thereupon, and in consideration thereof, Magee delivered to the board of directors the contract of August 13, 1875, with the following assignment indorsed thereon:

"For a good and valuable consideration I hereby sell, assign and transfer to the Syracuse, Geneva and Corning Railway Company all my right, title and interest in the within contract, they, the said S., G. & C. Railway Co. having, by resolution of their board of directors at a meeting held this day, assumed said contract and agreed to carry out all the agreements therein except as to the procuring the contract for the freight tonnage, which contract I am to procure."

September 14, 1875, an agreement was made between the plaintiff, Case and Gowen and the Syracuse, Geneva and Corning Railway Company, commencing as follows:

"It is agreed by the parties to the within agreement, between Edgar Munson, George M. Case and John E. Gowen and George J. Magee, dated August 13th, 1875 (The Syracuse, Geneva & Corning Railway Company taking the place of and now being the party of the second part), that it was and is the intention that all the assets and property of the Sodus Bay, Corning & New York Railroad Company (now the Sodus Bay & Corning Railroad Company), whether

covered by said mortgage or not, shall be transferred, assigned and turned over to the new company, now the party of the second part, so far as the party of the first part can accomplish that result," and embracing details not material here. This contract was signed by the plaintiff as president of the railroad company, and the corporate seal was attached. It was signed by the plaintiff and by Case and Gowen without seal.

September 27, 1875, by the procurement of Magee, a contract was made between the Fall Brook Coal Company, of which he was president, and Magee himself, parties of the first part, and the Syracuse, Geneva and Corning Railway Company of the second part, and the New York Central Railroad Company as parties of the third part, to the effect that all the coal of the Fall Brook Company and of the Morris Run Coal Company, destined for delivery upon the line of the New York Central railroad, should, for ten years, upon the completion of the Syracuse, Geneva and Corning railway, be carried upon that railroad from Corning to Geneva, and there delivered to the New York Central Railroad Company, the latter company agreeing to receive it and deliver it at the points of consignment upon its road, at specified prices and rates. The Syracuse, Geneva and Corning Railway Company agreed therein to complete its railroad in eight months from that date. This contract, on the part of the Syracuse, Geneva and Corning Railway Company, was signed by the plaintiff as its president, pursuant to a resolution of the board of directors to that effect. September 15, 1876, the same contracting parties, the plaintiff executing the agreement for the Syracuse, Geneva and Corning Railway Company, extended the time for the completion of that company's railroad until May 1, 1877, and, in other respects, confirmed the tonnage contract.

December 30, 1875, the board of directors of the Syracuse, Geneva and Corning Railway Company resolved to change its line and locate it elsewhere than upon the line actual and proposed of the Sodus Bay and Corning Railroad Company. The plaintiff was present and voted against the change. The change was an advantageous one for the company, apart from the contract of August 13, 1875, which contemplated its construction upon the line of the Sodus Bay and Corning Railroad Company. The construction of the road was commenced upon the new line; the original

contractors for its construction being unable to complete the same, Magee resigned as director in September, 1876, and became the contractor for the completion thereof.

November 15, 1875, the Syracuse, Geneva and Corning Railway Company executed its bonds secured by a first mortgage upon its property acquired or to be acquired, to the amount of $1,000,000 principal, with interest at seven per cent per annum, and providing for the sinking fund of one per cent per annum, as required by the contract of August 13, 1875. Magee was to be paid in the bonds of the company at eighty-five cents upon the dollar, and the stock of the company not already disposed of was to be thrown in. The entire stock of the company, $1,200,000, par value, was not considered valuable. In case the company did not have bonds enough to pay the entire cost of construction at the specified prices, the company agreed to give Magee its notes for the balance. The plaintiff, as director, voted that this contract be made. Magee finished the construction of the railroad, and it was open for business December 10, 1877. Of the $1,000,000 of the first mortgage bonds, $400,000 were expended for right of way, iron rails, engineering and other expenses, and $600,000 were delivered Magee under his contract for construction, leaving a balance due him which was paid to him in second mortgage bonds.

Meantime the plaintiff caused the mortgage upon the property of the Sodus Bay, Corning and New York Railroad Company to be foreclosed; the property was brought to sale and purchased by him; but, owing to some complications, he was delayed in tendering the deed thereof until May 10, 1877, when he made tender thereof to the Syracuse, Geneva and Corning Railway Company, and demanded that its first mortgage bonds be delivered, pursuant to the contract of August 13, 1875. The company raised no objection respecting the tender, but refused to deliver the bonds. The bonds were then worth par.

In September following, the plaintiff, Case and Gowen brought an action in the Supreme Court against the Syracuse, Geneva and Corning Railway Company and George J. Magee, to enforce the specific performance by the railroad company of the agreement of August 13, 1875, as assumed by the company on the part of Magee respecting the delivery of such bonds. He failed in that action because,

as director of the Syracuse, Geneva and Corning Company, he participated, in violation of his duty to the company, in making it agree to assume Magee's obligation to him (*Munson v. Syracuse, Geneva & Corning Railroad Company*, 103 N. Y. 58), and, therefore, it was voidable at the election of the company, and it had so elected. The Court of Appeals, however, ordered that the judgment be without prejudice to any action founded upon the contract of August 13, 1875. The decision of the Court of Appeals was made in October, 1886. This action was brought in February, 1894, and from the judgment in plaintiff's favor, rendered herein, this appeal is brought.

*Frank Hiscock* and *Albert H. Harris*, for the appellants.

*Benjamin F. Blair, George T. Spencer* and *C. La Rue Munson*, for the respondent.

LANDON, J. :

We think the contract of August 13, 1875, a valid one. Such was the intimation, although not the decision, of the court in *Munson v. Syracuse, Geneva & Corning Railroad Company* (103 N. Y. 58.) The intent of the contract was not to prevent competition in bidding upon the foreclosure sale, but to procure, through the foreclosure, a sale of the mortgaged property to a new railroad company for fifty per centum of the amount due upon the defaulted bonds of the insolvent company — a price manifestly greater than could be obtained for it from any purchaser who could not be sure of obtaining the coal tonnage contracts, which, under this contract, Magee agreed to procure for the proposed railroad company. Thus, the contract, which provided for the sale of the mortgaged property, provided for securing a price for it, enhanced, because of the coal tonnage clause of the contract. The price to be paid by plaintiff and his associates was immaterial, since the real selling price was a fixed one. Of course, there might be stockholders to complain of the price bid at the foreclosure sale. They are not here. Some of them have elsewhere had their day in court. (*Harpending v. Munson*, 91 N. Y. 650; *Pratt v. Munson*, 84 id. 582.) The plaintiff, Case, Gowen and the bondholders they represented had like interests, and it was lawful for them to act as one man in protecting them,

The rule which forbids parties having no interests in common from combining to prevent competition among themselves, and thus aiding the sacrifice of the property of another, does not apply.

The contract of August 13, 1875, was executed step by step, substantially as the parties to it intended that it should be, until December 30, 1875, when the Syracuse, Geneva and Corning Railway Company resolved to abandon the line of the Sodus Bay, Corning and New York Railroad Company, and adopt a new and independent line. That was not a repudiation of further performance, but the precursor of it. The plaintiff and Magee had co-operated in forming the new railroad company, both were stockholders and directors in it, and the plaintiff was its president and a member of its executive committee. Magee had assigned the contract of August 13, 1875, to the new company, which assumed, so far as Magee was concerned, and apparently so far as the plaintiff was concerned, Magee's obligations to the plaintiff under it, except as to the coal tonnage contracts, which, being for the benefit of the railroad company, Magee agreed to carry out, and did so. The assumption by the railroad company of Magee's obligation to the plaintiff to "deliver, or cause to be delivered," its bonds to him and his associates, was contemplated by the contract of August 13, 1875, and both plaintiff and Magee promoted that assumption as a forward step in the execution of their contract. The plaintiff and his associates accepted the substitution by their contract with the railroad company of September 14, 1875, wherein it is recited "The Syracuse, Geneva & Corning Railway Company taking the place of (Magee) and now being the party of the second part" in the contract of August 13, 1875. Plaintiff's subsequent action against the railroad company and Magee also attests this. This was not a mere executory parol modification of a sealed contract, and because unexecuted invalid (*McKenzie* v. *Harrison*, 120 N. Y. 260); but such an executed novation of it by the substitution of the new railroad company, as the obligor in place of Magee, as the original contract itself contemplated. It was simply a new contract in the place of the old one, with a new obligor in the place of the old one. (*Gibson* v. *Lenane*, 94 N. Y. 183; *First National Bank of Jersey City* v. *Leach*, 52 id. 350; *Southwick* v. *Sax*, 9 Wend. 122.) This construction, apparent from the original contract itself, is clearer when that contract

is viewed, as it should be, in the light of the circumstances then existing, and those which the contract was expected to bring into existence. If this substitution was valid, then Magee was thereby discharged. This is not contested, but the respondent's position is that the railroad company was not bound by the contract of assumption, and that, therefore, there was no substitution, no novation and no release of Magee.

This is the main question here, and we think the only one. The contract of assumption of Magee's obligation to plaintiff under the original contract was not adjudged invalid, because it was incomplete as a novation of Magee's contract, although that ground, as the report shows, was taken in the Court of Appeals by counsel; but it was held invalid because it "is repugnant to the great rule of law which invalidates all contracts made by a trustee or fiduciary, in which he is personally interested, at the election of the party he represents." (103 N. Y. 73.) The plaintiff "stood in the attitude of selling as owner and purchasing as trustee," and thus the railroad company could elect to repudiate its contract with him. It had received nothing from him. The contract of assumption between the plaintiff and the new railroad company was vitiated because of plaintiff's vicious relation to it. But for his own fault it would have been unavoidable. He cannot take advantage of his own wrong. Even if Magee stood *in pari delicto* with the plaintiff, it would not aid the latter. (*Unckles* v. *Colgate*, 148 N. Y. 529; *Saratoga County Bank* v. *King*, 44 id. 87.)

But as to Magee the conditions were different. In the original contract Magee had agreed that the new railroad company or himself should procure coal tonnage contracts sufficient to enable the railroad company to pay the interest upon its bonds and provide a sinking fund toward the payment of the principal. Such contracts would be, and doubtless proved to be, of great value to the railroad company. The trial judge no doubt rested his finding that the company's bonds were worth par in May, 1877, largely upon the credit these contracts gave to them. In the contract by which Magee assigned the original contract to the railroad company, Magee agreed with the railroad company to procure these contracts; and he afterwards did so, and the railroad company had the benefit of them. They formed the consideration between him and the railroad com-

pany for the assumption by the company of Magee's obligation to the plaintiff, Case and Gowen. It is true that Magee was a director of the company, and the same rule applicable to its contract of assumption with the plaintiff would apply to its like contract with Magee if, unlike the plaintiff, Magee had not given to the company a valuable consideration which it has elected to retain, and thus cannot repudiate the contract without restoring to Magee the consideration. (*Duncomb* v. *N. Y., H. & N. R. R. Co.*, 84 N. Y. 190.) This, after nearly twenty years, is not to be presumed.

The case also falls within the rule stated in *Munson* v. *Syracuse, Geneva & Corning Railroad Company* in respect to contracts made by the promoters of corporations: " If adopted by the corporation, and they are within the corporate powers, and are not otherwise subject to objection, they may become the contracts of the corporation and enforceable as such." Magee, by his tonnage contracts, infused value into the railroad company's property, while plaintiff's contract with it aimed at procuring its bonds for property it might not want, and so plaintiff and Magee were not *in pari delicto*.

The railroad company's contract of assumption with the plaintiff proved invalid because of the plaintiff's disability to make an unavoidable contract with the company for his own benefit, and because the new company elected in May, 1877, when plaintiff tendered the deed to it, to avoid it. Magee could not remove plaintiff's disability nor prevent the railroad company from taking advantage of it. Magee resigned from the directorship of the new company in September, 1876, when he became the contractor for the construction of the railroad and before the election by the company to avoid its contract with the plaintiff. Magee evidently intended the contract of assumption should be observed, for, in his proposals for construction, he provided that " any materials now in line or in superstructure of the Corning & Sodus Bay R. R. Co. to be turned over to me without charge." At the same meeting to which Magee submitted these proposals the plaintiff, as president of the board of directors, pursuant to its resolution, appointed a committee to report to the executive committee, of which the plaintiff was one, " in relation to the exchange of bonds with a committee appointed by the bondholders of the Sodus Bay, Corning & New York Rail

Road Company," thus showing that the idea of performing the contract with the plaintiff prevailed when Magee resigned as director.

Thus Magee, pursuant to the intention of the original contract of August 13, 1875, procured from the new railroad company, upon a valuable consideration from him, a contract valid between Magee and the company, by which the company assumed Magee's obligations to the plaintiff, and, aided by the plaintiff, also procured for him the like contract of assumption from the railroad company, except that the latter was voidable. At that time it was probably supposed, since the railroad company's engagement with Magee, August 31, 1875, to assume his obligation to the plaintiff, Case and Gowen, under the contract of August 13, 1875, was based upon the important consideration of Magee's agreement with the railroad company to procure the tonnage contracts, that that consideration, especially after Magee should have procured the tonnage contracts, would suffice, under the doctrine of *Lawrence* v. *Fox* (20 N. Y. 268), to vest the benefit of the assumption in the plaintiff without further contract from the railroad company to him, for the railroad company's contract with the plaintiff of September 14, 1875, by its form of expression, seems to subordinate its assumption clause to the minor function of introducing further details into the contract of August 13, 1875, and thus further novating that contract and substituting the new one in its place.

While every one ought to know the law, it is not true that he does, and, therefore, not strange that it was not foreseen that the consideration which moved from Magee to the railroad company, for his and the plaintiff's benefit, would become invisible, so far as the plaintiff was concerned, in the shadow of his fiduciary relations, and that the railroad company could continue to keep it without obligation to the plaintiff for the great advantage it gained by it.

But such was the plaintiff's misfortune. He had a contract with the railroad company which would remain good unless and until it should be avoided. (*Barr* v. *N. Y., L. E. & W. R. R. Co.*, 125 N. Y. 263; *Harrington* v. *Erie Co. Savings Bank*, 101 id. 257.) Plaintiff took it subject to no infirmity, except what proceeded from his attitude in relation to it. His position in the company, no doubt, afforded him some assurance that the contract would not be avoided. Subsequent transactions, notably the change of route, the delay of

the plaintiff in tendering the deed of the Sodus Bay property, and the total expenditure of the first mortgage bonds in construction, and the acquisition of most of the capital stock of the new company in the interests of the New York Central Railroad Company, probably led to the election to avoid. The plaintiff assumed the hazard, and assumed it with full knowledge of the facts. He took a contract subject to a contingency which might impair it. The contract was not void until the company elected to avoid it, May 10, 1877. Magee proceeded upon the assumption that the company's contract with the plaintiff, as well as that with himself, was valid. He made the tonnage contracts with the company, and adjusted his relations with it upon that basis; he resigned as director and, with the consent of the plaintiff, entered into a large contract with the company, under which he was compelled to earn all the bonds he received. It certainly was never intended that he should deliver these bonds to the plaintiff. Nothing can be clearer than that the plaintiff assented to these changed relations of Magee, because he had ceased to look to him for the bonds. The only rational conclusion from the whole transaction is that the plaintiff, with full knowledge of the facts as they successively took place, took the risk of the validity of his contract with the company, not knowing the law which made it voidable, and not supposing, until he tendered the deed, that the company could or would elect to avoid it. As plaintiff's contract with the railroad company was not void when Magee entered into his important contracts with it, plaintiff's release of Magee was founded upon a good consideration. Magee did not guarantee it to be indefeasible. Moreover, the plaintiff is estopped from disputing the validity of the release because his long assumption of its validity led Magee into contracts and expenditures which make it unjust to reinstate the contract of August 13, 1875, and compel the plaintiff to deliver the bonds under it. (*Veeder* v. *Mudgett*, 95 N. Y. 310; *Trustees, etc.,* v. *Smith*, 118 id. 634.)

It is true that the plaintiff did not change his position until the judgment in *Munson* v. *Syracuse, Geneva & Corning Railroad Company* (*supra*) taught him its invalidity, but as meantime his first position determined the action of Magee, he cannot by now changing it place Magee in the same position, as if he never held it,

and thus compel Magee to bear the whole loss to result from such change. (*Conrow* v. *Little*, 115 N. Y. 389.) It is true Magee knew all the facts, but he could not know in advance that plaintiff would change his position.

These views lead to a reversal of the judgment, and to a direction of judgment for defendant, with costs of the appeal and below. If, however, the respondent prefers that a new trial be granted, the order may be so entered, costs to abide the event.

All concurred.

Judgment reversed and judgment directed for the defendant, with costs, unless plaintiff elects to take a new trial, in which event a new trial is granted, costs to abide the event.