MALLORY *v.* HANAUR OIL WORKS.

*(Jackson.* May 8th, 1888.)

1. PARTNERSHIP. *What is. Agreement between corporations.*

An agreement between corporations engaged in manufacture of cotton-seed oil, to select a committee composed of representatives from each corporation, and to turn over to this committee the properties and machinery of each company, to be managed and operated for a specified term, by the committee, for the common benefit—the profits and losses to be shared in agreed proportions—is not a mere " traffic arrangement," but a contract of partnership.

2. CORPORATIONS. *Powers. Ultra vires. Contract of partnership.*

Such partnership contract is not within the express or implied powers of corporations organized under the Incorporation Act of 1875, Ch. 142, but is *ultra vires* and void so far as it is unexecuted, even if authorized by both share-holders and directors. Corporations may perform only *authorized,* not *unforbidden,* acts.

Cited: Acts 1875, Ch. 142.

(Code, §§ 1691· *et. seq.* (M. & V.).

Cases cited and approved: Elevator Co. *v.* Railroad, 85 Tenn., 703; 101 U. S., 71; 10 Gray, 582 (71 Am. Dec., 681).

*Question reserved.* Is such combination void as tending to create a monopoly ?

3. SAME. *Ultra vires. Contract of partnership. When unexecuted.*

When the contract of partnership is for three years—two of which have expired—it is *unexecuted* as to the remaining year, in the sense that it may be repudiated as *ultra vires,* and property delivered to the committee for use of the partnership recovered at once by the corporations.

Case cited and approved : 101 U. S., 86.

4. SAME. *Void contract of partnership. Relations of parties. Tenancy. Notice.*

Such void contract of partnership, when partly performed, does not create between the corporations and the committee a tenancy from year to year, for the termination of which notice is required.

Mallory *v.* Oil Works.

5. FORCIBLE ENTRY AND DETAINER. *Notice not required.*

"Service of the warrant" is the only "notice to quit" that is necessary in forcible entry and detainer.

Code cited: ₹ 4082 (M. & V.); ₹ 3351 (T. & S.).

FROM SHELBY.

Appeal in error from Circuit Court of Shelby County. L. H. ESTES, J.

METCALF & WALKER for Mallory.

L. E. WRIGHT and L. & E. LEHMAN for Hanaur Oil Works.

LURTON, J. · This is an action of unlawful detainer, brought by the Hanaur Oil Works, a corporation created under the General Incorporation Act of 1875, and engaged in the manufacture of cotton seed oil at Memphis, Tenn.

The facts which raise the question to be determined are these: In July, 1884, a contract was entered into by and between four corporations engaged in manufacturing cotton seed oil at Memphis for the formation of what is designated in the agreement as a "combination syndicate" and "partnership." The contracting mills agreed to select a committee, composed of representatives from each corporation, and to turn over to this commit-

tee the properties and machinery of each mill, to be managed and operated by this committee, through officers, agents, and employes selected by them, for the common benefit, the profits and losses of such operations to be shared in proportions agreed upon. This arrangement was to last one year, but, with consent of all, might be renewed for two additional years, and, as appears, was at end of first year renewed for two other years, terminating August 1st, 1887.

The facts clearly establish that the possession of the several mills was turned over to this executive committee, and they were operated by these managers thenceforward under the name of the "Independent Cotton Seed Association." There was a provision in the contract by which other mills were to be admitted by consent, and a fifth corporation was in fact subsequently admitted. The Hanaur Oil Works was one of these contracting corporations, the contract being authorized by both share-holders and directors. In July, 1886, the business of the second year having been about concluded, the board of directors of the Hanaur Oil Works passed a resolution declaring this contract void, as being an agreement *ultra vires*, and their president was instructed to take possession of their mill. There is some proof tending to show that, upon demand of the president of the defendant in error, the general superintendent of the "Independent Cotton Seed Association" surrendered possession of the Hanaur mill to him, and agreed

to hold for him, and that he afterward repudiated this agreement by surrendering possession to Mr. Mallory, one of the executive committee, who thereupon locked up the mill, and gave instructions to a watchman in the employ of the committee not to admit the Hanaur officers.

In the view we take of the case it is not material to determine the legal effect of the evidence upon this question, as to what passed between Mr. Camp, the superintendent, and Mr. Cochran, the president. The fact is, that at the time the writ of unlawful detainer was sued out the mill of the Hanaur company was in the exclusive possession of the officers of the "Independent Cotton Seed Association," and the officers of the Hanaur company were excluded therefrom. There was a judgment in favor of the Hanaur Oil Works, and from this an appeal has been prosecuted.

The argument here has largely turned upon the correctness of the charge of the Circuit Judge, who distinctly instructed the jury that the contract between the Hanaur company and the other four corporations was a contract for a partnership between corporations, and that under the charter of the Hanaur Oil Works it had no power to make such a contract, and that it was therefore void, and that it had a right to recover possession of its property, it being withheld solely under and by virtue of an agreement *ultra vires*.

A partnership, says Judge Story, "is usually defined to be a voluntary contract between two or

more competent persons to place their money, effects, labor, and skill, or some or all of them, in lawful commerce or business, with the understanding that there shall be a communion of the profits thereof between them."

Pothier says that " a partnership is a contract whereby two or more persons put, or contract to put, something in common to make a lawful profit in common, and reciprocally engage with each other to render an account thereof." Story. Part., Sec. 2.

A careful examination of this agreement discloses every material element to a contract of partnership. The absolute ownership of the corporate property, the mill's machinery, etc., is not conveyed to the partnership, nor is this necessary. The beneficial *use* of all such property is surrendered to the common purpose. The provisions for the complete possession, control, and use of the properties of the several corporations by the partnership or syndicate is perfect. Nothing is left to the several corporations but the right to receive a share of the profits and participate in the management and control of the consolidated interests as one of the new association. The contract is, both technically and in its essential character, a partnership in so far as it is possible for corporations to form such an. association.

It is, however, argued by the learned counsel for appellants that if it be a partnership that it does not therefore follow that it is *ultra vires;*

that such a contract, not being prohibited by law or the charter of the defendant in error, or against public policy, is not void, even if in excess of power expressly conferred; that the business proposed by the contract, being within the purposes of the charter, is therefore within the implied powers of the corporation, and not *ultra vires.* In other words, " that the question is not whether the corporation had, by virtue of the act of incorporation, authority to make the contract, but whether they are by those statutes *forbidden* to do it." In this doctrine we do not concur. There is, however, respectable authority for the position. A corporation, being an artificial creation, is the very thing it is made by the statute which brings it into being, and nothing more. The extent of its powers are those enumerated in its charter, or implied by fair and natural construction of powers expressly conferred.

The charter is the measure of its powers, and the enumeration thereof implies the exclusion of all others. We are not to look to the charter to see whether the thing done be prohibited, but whether there is authority to do it. These principles we understand to have the support of the great weight of authority in this country, and to have the sanction of the Supreme Court of the United States. *Thomas* v. *Railroad Company,* 101 U. S., 71.

This view of the law has been the one entertained by this Court, and clearly and distinctly

enforced in an opinion by the present Chief Justice in the case of *Elevator Company* v. *Memphis & Charleston Railroad Company*, 1 Pick., 703. The power to enter into a partnership is not expressly or impliedly conferred by our Act of 1875, under which the Hanaur Oil Works is incorporated. Neither is such authority within the implied powers of corporations. A partnership and a corporation are incongruous. Such a contract is wholly inconsistent with the scope and tenor of the powers expressly conferred and the duties expressly enjoined upon a corporation, whether it be a strictly business and private corporation or one owing duties to the public, such as a common carrier. In a partnership each member binds the firm when acting within the scope of the business. A corporation must act through its directors or authorized agents, and no individual member can, as such member, bind the corporation.

Now, if a corporation be a member of a partnership, it may be bound by any other member of the association, and in so doing he would act not as an officer or agent of the corporation, and by virtue of authority received from it, but as a principal in an association in which all are equal, and each capable of binding the society by his acts. The whole policy of the law creating and regulating corporations, looks to the exclusive management of the affairs of each corporation by the officers provided for or authorized by its charter. This management must be separate and ex-

clusive, and any arrangement by which the control of the affairs of the corporation should be taken from its stockholders and the authorized officers and agents of the corporation, would be hostile to the policy of our general incorporation acts. The decided weight of authority is that a corporation has not the power to enter a partnership, either with other corporations or with individuals. Says Mr. Morawetz: "It seems clear that corporations are not impliedly authorized to enter into partnership with other corporations or individuals. The existence of a partnership not only would interfere with the management of the corporation by its regularly appointed officers, but would impair the authority of the share-holders themselves, and involve the company in new responsibilities through agents over whom it had no control." 1 Morawetz on Corporations, § 421; *Whittenton Mills* v. *Upton*, 10 Gray, 582 (S. C., 71 Am. Dec., 681); Angel & Ames on Corporations, § 272.

It is unnecessary to consider this contract as constituting a mere traffic arrangement; for the conclusion already announced that it was an effort to form a partnership, determines that in its scope and effect it sought to accomplish much more than would be understood by the phrase "traffic arrangement."

The next assignment is that this contract, if *ultra vires* at all, was so only as to the power of the officers, and not as to the power of the corporation; that the thing to be done, being with-

in the purposes and scope of the franchises of the corporation, and the contract being ratified by the share-holders, became valid and binding. There may be acts *ultra vires* as to the officers, and yet not so as to share-holders. But the contract here entered into we have already held to be beyond the power of the corporation, and such an act cannot be made valid by the assent of every stock-holder.

It is next argued that if the contract be *ultra vires*, that it is an executed contract, and that the courts will not in such case interfere. This contract had yet a little over one year to run. The possession of the Hanaur mills had been obtained under it, and was withheld under a claim of right by reason of the supposed validity of the partnership.

As to the unexpired time, during which the defendants in error might be deprived of the use of their property, and subjected to the hazards of another years' operations, it was not an executed contract. The possession obtained under this contract was illegal, and it was the duty of the officers of the Hanaur company to renounce the arrangement and recover possession. There are cases where an invalid contract, being fully executed, the courts will not entertain a suit to recover money or property transferred under such agreement, or, if they do interfere, will do so only upon equitable terms. But the defense here made would result, if successful, in enforcing the performance

of the unexecuted part of a void contract. It is not a case of contract fully executed. The part remaining to be executed is a material part, and is beyond the power of defendant in error to make or sanction. Having entered into it, it was its duty to rescind or abandon it. In a case where a lease had been made by a railway company for a term of twenty years of its road and franchises, and which, after a lapse of five years, it rescinded, and was thereupon sued for damages under a clause in the lease which authorized rescission, and provided for compensation for unexpired term, the Supreme Court of the United States said: "It is not a case of a contract fully executed. The very nature of the suit is to recover damages for non-performance. As to this, it is not an executed contract; not only so, but it is a contract forbidden by public policy, and beyond the power of defendant to make. Having entered into the agreement, it was the duty of the company to rescind or abandon it at the earliest moment. This duty was independent of the clause which gave them the right to do it. Though they delayed its peformance several years, it was nevertheless a rightful act when done. Can this performance of a legal duty, a duty both to stockholders and to the public, give to plaintiffs a right of action? Can they found such a right on an agreement void for want of corporate authority and forbidden by the policy of the law? To hold that they can is, in our opinion, to hold

that any act performed in executing a void contract makes all its parts valid, and that the more that is done under a contract forbidden by law, the stronger is the claim to its enforcement by the courts." *Thomas* v. *Railroad Company*, 101 U. S., 86.

That the defendant in error has submitted to a void contract, by which it has been deprived of the use of its property for two years, furnishes no sound reason why it shall submit for three years. To hold that it did, would be to apply the doctrine of part performance in a way to perfect and legalize illegal contracts which were partly performed.

We have not deemed it necessary to consider the question of the legality of such a combination of corporations as one tending to create a monopoly, for the ground upon which we place the case needs no additional prop. The question of the validity of such an arrangement is a very grave one, but need not now be considered.

The suggestion that if this contract was void, yet nevertheless it operated to convert the managers of the combination into tenants from year to year, and that such tenancy could only be terminated at end of a year and upon six months' notice, is not tenable. The relation of landlord and tenant never existed under the contract, if it be considered as valid, and could not spring from its illegality. The Hanaur mill company had a right to repudiate the arrangement at any time, and it was the duty of plaintiffs in error to have at

once surrendered possession. The service of a writ in a suit of unlawful detainer was the only notice they could legally demand. When the action of unlawful detainer will lie under our statutes, no other notice than the suing out of a writ is necessary. Code (M. & V.), § 4082.

The result is, that we hold that there was no error in the charge of the Circuit Judge, or his refusal to charge, and the judgment must be affirmed, with costs.

Associate Justice Folkes, having been of counsel, did not sit in this case.