HARRY B. DUANE & another *vs.* MERCHANTS LEGAL STAMP
COMPANY & others.

Suffolk.    March 9, 1917. — June 27, 1917.

Present: RUGG, C. J., BRALEY, DE COURCY, PIERCE, & CARROLL, JJ.

*Equity Jurisdiction,* Plaintiff must come into court with clean hands, Accounting
sought by participant in illegal business. *Corporation. Monopoly. Wrong-
doer without Remedy.*

One of the stockholders in a corporation which has been conducting with profit
a monopolistic business in violation of St. 1908, c. 454, cannot maintain a bill in
equity in which he alleges that profits from the business have been distributed
to other stockholders and not to him and seeks to compel an accounting and a
distribution to him of his share of the profits in the way of dividends, because
the court will not lend its assistance to the promotion of an unlawful adventure.
The mere fact, that a prayer in such bill is that the corporation be restrained from
continuing to manage its affairs and from conducting its business in violation of
the statute, does not amount to a renunciation of an illegal executory contract
such as would purge the plaintiff of his share in the illegality, because he already
has shared in the illegality and the profits which he seeks to share were the
result in part of his so sharing.

BILL IN EQUITY, filed in the Superior Court on June 10, 1916,
and afterwards amended. The bill is described in the opinion.

The defendants demurred to the bill, alleging as one ground of
demurrer the following:

"5. That as to all matters and things set forth and alleged to be
illegal and void, including specifically those matters and things
alleged to have been done for the purpose of restraining, restrict-
ing and monopolizing business and dealings in trading stamps . . .
the plaintiffs are *in pari delicto* with the defendants, are parties
to said alleged illegal provisions, and allege that they entered into
the same with intent to restrain, restrict and monopolize said
business and dealing in trading stamps."

The demurrer was heard by *Jenney,* J., and was sustained.
A final decree was entered dismissing the bill. The plaintiffs
appealed.

*B. B. Jones, (C. A. Wilson* with him,) for the plaintiffs.

*G. W. Anderson,* for the defendant Ferris.

*A. M. Lyman,* for the other defendants.

RUGG, C. J.  This is a suit in equity brought to compel the defendant corporation to recognize the plaintiff as a stockholder and to permit him to share in dividends earned and to allow him to participate in the corporate management.  The plaintiff Duane and the corporation which he represents are joined as plaintiffs and will be referred to hereafter as the plaintiff.

The bill sets out somewhat in detail the incorporation of the defendant corporation by ten stockholders, one of whom was the plaintiff, and each of whom represented another business, firm or corporation in which he was interested.  It avers that the purpose of the organization of the defendant corporation by these retail merchants or their representatives was to deal in trading stamps and to supply the incorporators or the business enterprises with which they were identified with trading stamps; that the business of the corporation had been conducted by it since about 1907 through the execution of one form of contract called "A" with each of the incorporators, of another form of contract called "B" with each of the business concerns represented by the incorporators, and by a third form of contract called "C" with other merchants who might desire to use its trading stamps. The bill further alleges that the dominant design and direct tendency of these several forms of contracts was to restrict and stifle competition in the trading stamp business in this Commonwealth and to establish a monopoly therein by the defendant corporation, and to eliminate any effective rivalry with it by others in the trading stamp business, and that a monopoly in fact has been created so that approximately ninety per cent of the business in Boston and vicinity, conducted by merchants with trading stamps, is controlled by the defendant corporation, and that ninety per cent or more of trading stamps used in this Commonwealth are furnished by it under its three different forms of contracts.  It is averred, also, that on February 26, 1915, the decision was rendered in *Merchants Legal Stamp Co.* v. *Murphy*, 220 Mass. 281, declaring in effect that contracts like "A," "B" and "C" were illegal as being contrary to St. 1908, c. 454, which prohibits transactions operative to choke competition and to restrain trade, and that that decision was speedily called to the attention of all parties to this suit, and that the plaintiff previous to July, 1915, repeatedly notified the defendant corporation, its directors and attorney;

that contracts "A," "B" and "C" were illegal and demanded distribution of profits among the stockholders and in particular to the plaintiff in proportion to their holdings of stock and not otherwise, and that, notwithstanding these facts, the defendant corporation has continued its illegal and monopolistic practices and since July 7, 1915, has paid to certain of its stockholders dividends of approximately $155,000, but has refused to pay any dividends to the plaintiff, although it has offered him a small sum as the surrender value of his stock in asserted accordance with the illegal provisions of contracts "A" and "B." There are further allegations to the effect that the defendant corporation has in cash on hand profits to a much greater amount than is necessary to pay to the plaintiff dividends equal to those paid to the other stockholders. There are prayers for an accounting of profits and distribution of his proportionate share to the plaintiff. Although there is a prayer that the defendant corporation be restrained from continuing to manage its affairs and from conducting its business in violation of the anti-monopoly act, St. 1908, c. 454, the frame of the bill and the burden of the complaint is for relief against discrimination toward the plaintiff in the distribution of the profits thus alleged to have been made illegally. As matter of construction it seems plain that the main purpose of the bill is to obtain for the plaintiff this money benefit by direct payment and by recognition as a shareholder, and the other allegations are incidental to that chief aim.

Stripped of all subsidiary and ancillary matters, the real purpose of this bill is to procure through the aid of a court of equity a share in the profits of an illegal enterprise. The allegations that the main features of agreements "A," "B" and "C," in their conception, execution and consequence were contrary to law, must be taken as true. They appear to be interdependent parts of a single scheme. Even if they be treated as separable, their distinctive characteristics and their direct result have been contrary to law. That was established by the decisions in *Merchants Legal Stamp Co.* v. *Murphy,* 220 Mass. 281, and *Merchants Legal Stamp Co.* v. *Scott,* 220 Mass. 389, and is no longer open to discussion. It is elementary law that no court will consciously lend its assistance to the enforcement of an illegal contract or to the promotion of an unlawful adventure. Where parties have

entered into an undertaking contrary to law or have carried on a lawful undertaking through illegal means, the law leaves the parties as to the fruits of such an enterprise where the parties leave themselves. It affords to the immediate parties no assistance in untangling the snarls attending upon lawless conduct. The profits in which the plaintiff seeks a share are those which have accrued directly from the prosecution by the defendant corporation of the illegal business or the legal business in an unlawful way. The plaintiff does not bring himself within the principle that while a contract, involving no moral turpitude but simply prohibited by law, remains executory, either party may disaffirm it and recover back the money paid or the property advanced on it. *Eastern Expanded Metal Co.* v. *Webb Granite & Construction Co.* 195 Mass. 356, 362. This suit is not, in any right sense, a disaffirmance of the relation of the plaintiff to the guilty acts of the defendant corporation. Disaffirmance implies conduct looking to a withdrawal from the unlawful enterprise, a renunciation of all participation in it and a return of the property put into it. The plaintiff does not proceed upon that footing. His relation to the defendant corporation is not executory simply because his contract with it has some years longer to run. It is to a substantial extent executed because as to its illegal features it has been in operation for a considerable period. He has remained for several years a party to the illegal monopoly, has been a party to its inhibited contracts, and has shared in its profits. He does not now disclaim his whole connection with the illegal aspects of the affair, but he demands his proportion of the booty which has been secured from their prosecution. That is a far different proposition from the renunciation of a wholly executory contract. It is not a complete disavowal of all unlawful factors connected with the business and an effort to hold the defendant to strict conformity to law.

It is not necessary to determine whether the scheme of the defendant was unlawful at its inception as tending to create a monopoly contrary to the common law, or whether it was made unlawful only by St. 1908, c. 454. The contract between the plaintiff and the defendant was by implication subject to constitutional legislation and this statute was within the Constitution as applied to existing contracts. *Louisville & Nashville Railroad* v. *Mottley*, 219 U. S. 467.

The plaintiff in substance demands that, although he was a party to the unlawful methods of transacting the business of the defendant corporation, he still is entitled to participate in the profits which have flowed from that course of conduct. The allegations of the bill in both these particulars are specific. In this respect the case at bar is indistinguishable in principle from *Snell* v. *Dwight,* 120 Mass. 9, *Wilson* v. *Jackson,* 204 Mass. 432, *Downey* v. *Charles S. Gove Co.* 201 Mass. 251, *Unckles* v. *Colgate,* 148 N. Y. 529. This is not an instance where the transaction in issue has only a remote connection with the prohibition of the statute, and where, therefore, it will be upheld. *United Shoe Machinery Co.* v. *La Chapelle,* 212 Mass. 467 and cases cited at page 484. The direct purpose of the suit at bar is to inquire into the profits of the forbidden undertaking, and secure to the plaintiff his proportion. It is contrary to well settled principles of chancery jurisprudence to sustain such a suit.

*Decree dismissing bill affirmed with costs.*