HARRY B. DUANE vs. MERCHANTS LEGAL STAMP
COMPANY & others.

HARRY B. DUANE & another vs. SAME.

Suffolk.   March 19, 1918. — September 21, 1918.

Present: RUGG, C. J., BRALEY, CROSBY, & CARROLL, JJ.

*Equity Jurisdiction,* No aid between wrongdoers.  *Wrongdoer without Remedy.*
  *Constitutional Law.*

In a suit in equity by one of the stockholders of a trading stamp corporation, which
   had conducted a monopolistic business in violation of St. 1908, c. 454, against
   the corporation and the other parties to the enterprise, it was *said* that, "The
   theory of the law is that general morality and business integrity are best pro-
   moted by not undertaking to aid repentant participants in executed illegal
   transactions" and by leaving them without remedy against one another.

*Duane v. Merchants Legal Stamp Co.* 227 Mass. 466, affirmed and declared not to
   be distinguishable from *St. Louis, Vandalia & Terre Haute Railroad* v. *Terre
   Haute & Indianapolis Railroad,* 145 U. S. 393.

It also was *held,* that no federal question was raised in the present case of *Duane*
   v. *Merchants Legal Stamp Co.* and, moreover, that, if such a question was
   raised, the plaintiff had not been deprived of his property without due proc-
   ess of law and had not been denied the equal protection of the laws.

BILL IN EQUITY, finally filed in the Supreme Judicial Court in
its amended form on September 21, 1917, by a stockholder of the
Merchants Legal Stamp Company, a business corporation organ-
ized under the laws of this Commonwealth, containing the allega-
tions described in the opinion and praying for the following relief:

"1. That the individual defendants be enjoined from continu-
ing to manage the affairs and conduct the business of the stamp
company in violation of St. 1908, c. 454, or any other law or laws
of this Commonwealth, and from imposing or enforcing in the man-
agement of its business or in the sale or distribution of stamps
any restrictions which are in violation of said laws.

"2. That the individual defendants be enjoined from refusing
to supply said Houghton and Dutton Company or any other
merchants with stamps on reasonable and lawful terms under
the pretence or upon the ground that they are authorized in
such refusal by the terms of paragraph 7 of contract 'A.'

"3. That an account be taken of the loss of lawful profits

which the stamp company has suffered since January 1, 1915, by reason of the said illegal conduct of the defendant directors, and that the directors be ordered to pay the amount of such losses to the Stamp Company.

"4. For such further and general relief as to the court shall seem meet."

Also another

BILL IN EQUITY, filed November 5, 1917, between the same parties except that the Ginter Grocery Company, the beneficial owner of the shares of the defendant corporation held by the plaintiff Duane, was joined as a plaintiff, the allegations being described in the opinion. The relief prayed for was as follows:

"1. That the defendants be ordered by this honorable court to recognize the rights of the plaintiff Duane as a stockholder in said corporation, and to receive in common with other stockholders dividends in the proportion of his stock holdings.

"2. That an account be taken of the profits and dividends which have been divided by the defendant corporation between its stockholders under the pretended authority of said contracts 'A' and 'B' since January 18, 1915, and that the defendants be ordered to pay to the plaintiff Duane on account of such profits the dividends to which he is entitled as such stockholder.

"3. That the defendants be enjoined from distributing the profits of the business among the stockholders in proportion to the purchase of the stamps by them or the firms or corporations which they represent, and be enjoined from making any distribution of such profits until the further order of this court.

"4. That the defendants be enjoined from continuing to manage the affairs and business of the corporation in violation of the laws of this Commonwealth or in violation of St. 1908, c. 454.

"5. That in the meantime, until the further order of this court, a receiver for the defendant corporation be appointed by this honorable court to hold possession of its property and to manage its affairs and business in accordance with the laws of this Commonwealth and under the court's direction."

These are in substance the same as the prayers contained in the bill filed on June 10, 1916, which was before this court when the decision reported in 227 Mass. 466 was made.

In each of the suits the defendants demurred to the bill as amended, and the cases were heard upon the demurrers by *De Courcy*, J., who in each of the suits made an order that the demurrer be sustained and the bill be dismissed, and thereupon, at the request of the parties, reported the cases for determination by the full court.

*B. B. Jones*, for the plaintiffs.

*A. M. Lyman*, for the defendants.

RUGG, C. J.  For convenience the individual and corporate plaintiffs will be referred to in this opinion as the plaintiff, the defendant corporation as the Stamp Company, and the other defendants as the directors.[1]  The plaintiff alleges that he was a stockholder in the Stamp Company when it was incorporated, and still continues to be a stockholder.  A suit between the same parties was considered in 227 Mass. 466.  The kind of business of the Stamp Company and the means by which it was conducted there are narrated at length and need not here be repeated.  It is enough to say that, according to the allegations of the bill in that suit, the business of the Stamp Company was that of supplying trading stamps; that it employed methods expressly designed to drive competitors from the field and to create a monopoly in that branch of trade, and that a monopoly had been established so that within this Commonwealth effectual rivalry practically had been eliminated; that the methods used in the promotion of the business and the establishment of the monopoly were in direct defiance of the prohibitions against monopolistic practices contained in St. 1908, c. 454, and therefore were unlawful, as was held in *Merchants Legal Stamp Co.* v. *Murphy*, 220 Mass. 281, and *Merchants Legal Stamp Co.* v. *Scott*, 220 Mass. 389.  Instrumentalities adopted for the accomplishment of these ends were contracts referred to as "A," "B" and "C."  The plaintiff, on the allegations of the bill there under consideration, as a stockholder and by contracts belonging to the most favored class of users of trading stamps, was an active participant in the unlawful methods and illegal practices of the Stamp Company.  The purpose of that suit was stated in the decision of that case at page 468, in these words: "Although there is a prayer that the defendant corporation be restrained from continuing to manage its affairs and from conducting its business in violation of the anti-

monopoly act, St. 1908, c. 454, the frame of the bill and the burden of the complaint is for relief against discrimination toward the plaintiff in the distribution of the profits thus alleged to have been made illegally. As matter of construction it seems plain that the main purpose of the bill is to obtain for the plaintiff this money benefit by direct payment and by recognition as a shareholder, and the other allegations are incidental to that chief aim. Stripped of all subsidiary and ancillary matters, the real purpose of this bill is to procure through the aid of a court of equity a share in the profits of an illegal enterprise." That having been the construction of the allegations of that bill, and the foundation upon which the plaintiff then rested his contentions, the result was inevitable that the bill must be dismissed for the reason that courts do not supervise the distribution among wrongdoers of spoils derived from unlawful conduct. Parties to such affairs are left where their own acts put them. The law affords no help to any of them. In the light of the arguments then addressed to us, it did not seem necessary to elaborate further the reasons for that construction.

The consideration of the suits at bar must be approached with reference to that background. The historical allegations of the earlier suit touching the kind of business of the Stamp Company, the illegal methods by which it was prosecuted, and its monopolistic aim and accomplishments, are repeated in substance on the present records. Succinctly stated, the facts averred in the bills in the present suits are that the plaintiff in 1904 became one of several incorporators of the Stamp Company, a corporation organized for the purpose of carrying on the business of dealing in trading stamps. That was a legitimate enterprise. Its business was conducted in a lawful manner until 1907, when an illegal method was adopted by the Stamp Company whereby its stockholders as "insiders" were given a preference over those who were not stockholders or "outsiders," and a monopoly was established. These illegal methods, which were designed to give to the Stamp Company a monopoly of the trading stamp business and which actually produced that result, consisted chiefly of contracts "A," "B" and "C," the first two being executed between the Stamp Company and its stockholders and the third between the Stamp Company and its other customers. The

plaintiff himself executed contracts in the forms "A" and "B" with the Stamp Company, each dated May 17, 1907, for a term ending on April 11, 1924. In 1915 the essential provision of these contracts, whereby the Stamp Company carried on its business, were declared to be unlawful because tending to establish a monopoly and contrary to the statute. Thereupon the plaintiff notified the Stamp Company and the directors that he would no longer be bound by his contracts "A" and "B." with the Stamp Company and demanded that the use of the monopolistic contracts be discontinued and the business of the Stamp Company conducted according to law. Allegations to the effect that the monopoly will cease to exist with the cessation of the use of contracts "A," "B" and "C," and that it is not already so firmly entrenched that it will continue to be a monopoly even by the use of contracts normally lawful for a stamp dealer, are not clear or free from ambiguity, but without discussing or deciding that point we assume in favor of the plaintiff that they are sufficient. There is a further allegation to the effect that the defendants refuse to declare dividends in the Stamp Company to the plaintiff such as other stockholders receive, or to distribute to him his share of profits, on the ground of a pretended cancellation of the plaintiff's shares of stock in accordance with the terms of contract "A," because of his refusal to use the trading stamps of the Stamp Company as required by contracts "A" and "B." The plaintiff for a period of seven or eight years having been a party to illegal contracts and unlawful methods of business and having shared in the profits of that business, now asks the aid of a court of equity to compel the other party to the contract to cease to try to hold him to the terms of his contracts, which according to their terms are to run for several years more, and to abandon the use of illegal methods, to conduct the business according to law, and to recognize the plaintiff as a stockholder.

The controlling principle of law is well settled. The only difficulty lies in its application. Courts will not lend their aid to relieve parties from the unfortunate results of their own illegal adventures. The governing rule of law was stated by Chief Justice Knowlton with his usual comprehensive clearness and exact accuracy in *Eastern Expanded Metal Co.* v. *Webb Granite & Construction Co.* 195 Mass. 356, 362, in these words: "It has been held

in many cases that, where the matters called for in the contract that render it illegal do not involve moral turpitude, but are merely *mala prohibita*, either party, while it remains executory, may disaffirm it on account of its illegality and recover back money or property that he has advanced under it. 'If the contract has been executed the court will not relieve either party from the consequences of his own violation of law. But so long as it is entirely unexecuted in that part which the law forbids, there is a *locus penitentiae*." That statement is supported by affluent citation of authorities there collected from the decisions of this court and from many other jurisdictions. It was that principle which was followed and applied when the parties were here in 227 Mass. 466. The same principle is equally applicable to the facts now alleged. The plaintiff and the Stamp Company and the directors have co-operated in rearing, promoting and making secure the monopolistic domination of the Stamp Company in its line of business, and in eliminating and excluding all effective competition. Their joint efforts through a series of years have produced the very mischief meant to be restrained and prevented by the statute. The contracts to which the plaintiff was a party purported to devote his property as a stockholder, together with that of his fellow shareholders, to the perpetration of this prohibited project for a definite term of years, and these contracts in the part forbidden by law have been executed for several of those years. The plaintiff has shared during those years in the profits of the scheme which have accrued through the operation of these illegal elements in the carrying on of the business, and he has shared in accordance with unlawful provisions of his contracts. In no right sense can it be said that the contracts of which the plaintiff complains remain "entirely unexecuted in that part which the law forbids." As to the illegal element, they have been executed in part and remain executory in part. Doubtless the contracts were void. It was the duty of the plaintiff and all the defendants as parties to them to obey the law, to repudiate the contracts, to renounce such business methods, and to abandon the monopoly. But according to the allegations of the bill all the defendants refuse to abrogate the contracts and pretend to continue to be bound by them, and persist in holding the plaintiff to the terms of the contracts to which he is a party.

The plaintiff cannot be under any liability for doing his duty in thus repudiating the illegal contracts and asking that the business be managed according to law.  But on the other hand he cannot hold his confederates liable to himself for their failure or refusal likewise to abjure the illegal contracts and business methods.  He cannot invoke the aid of the law to compel them to give up the partially executed illegal project and restore to him his property rights merely because he desires now to relinquish the prohibited and pursue the lawful course.  The law refuses relief to the plaintiff not out of any tender regard for the defendants, but because the whole affair is so tainted with illegality that no assistance will be afforded to anybody culpably connected with its executed aspects.  All are equally reprehensible respecting the very matter as to which relief is sought.  The law does not undertake to discriminate as to degrees of guilt.  The defence is allowed "not as a protection to the defendant, but as a disability in the plaintiff." *Myers* v. *Meinrath,* 101 Mass. 366.  If the plaintiff were an innocent shareholder who had had no part in the illegal elements of the business so far as executed, and seasonably sought to restrain illegal business by the corporation, and there were appropriate allegations entitling a shareholder to proceed in behalf of the corporation, injunctive and other adequate relief would be afforded as of course.  Courts of equity are swift to protect a minority stockholder against unlawful or oppressive conduct of a corporation.  *Richardson* v. *Clinton Wall Trunk Manuf. Co.* 181 Mass. 580.   *Adams* v. *Protective Union Co.* 210 Mass. 172.   *Hill* v. *Murphy,* 212 Mass. 1.   *Hayden* v. *Perfection Cooler Co.* 227 Mass. 589, 593.   *Delaware & Hudson Co.* v. *Albany & Susquehanna Railroad,* 213 U. S. 435.  It is only because this plaintiff in his capacity as shareholder is not innocent touching the very matter of which he now complains, but has been an active participant in the illegal factors of it which have been in considerable part executed, that the law refuses him relief.  The theory of the law is that general morality and business integrity are best promoted by not undertaking to aid repentant participants in executed illegal transactions.  "The suppression of illegal contracts is far more likely in general to be accomplished, by leaving the parties without remedy against each other."  *Atwood* v. *Fisk,* 101 Mass. 363, 364.

The cases at bar seem to us wholly indistinguishable from *St.*

*Louis, Vandalia & Terre Haute Railroad* v. *Terre Haute & Indianapolis Railroad*, 145 U. S. 393. The facts in that case were that one railroad company contrary to law had leased its property, equipment and franchise to another railroad company for a term of nine hundred and ninety-nine years, and pursuant to the provisions of the lease had delivered to the lessee all that was described in the lease. After the lapse of seventeen years the lessor railroad disavowed the lease on the ground of its illegality and sought the aid of a court of equity to recover possession of its property amongst other relief. It was said at pages 407 and 408 by Mr. Justice Gray: "The general rule, in equity, as at law, is *In pari delicto potior est conditio defendentis;* and therefore neither party to an illegal contract will be aided by the court, whether to enforce it or to set it aside. . . . When the parties are *in pari delicto*, and the contract has been fully executed on the part of the plaintiff, by the conveyance of property, or by the payment of money, and has not been repudiated by the defendant, it is now equally well settled that neither a court of law nor a court of equity will assist the plaintiff to recover back the property conveyed or money paid under the contract. . . . The contract has been fully executed on the part of the plaintiff by the actual transfer of its railroad and franchise to the defendant; and the defendant has held the property, and paid the stipulated consideration from time to time, for seventeen years, and has taken no steps to rescind or repudiate the contract. Upon this state of facts, for the reasons above stated, the plaintiff, considered as a party to the unlawful contract, has no right to invoke the assistance of a court of equity to set it aside. And so far as the plaintiff corporation can be considered as representing the stockholders, and seeking to protect their interests, it and they are barred by laches." The words of that decision were quoted at length and made the basis of the judgment in *Harriman* v. *Northern Securities Co.* 197 U. S. 244 at pages 295, 296. In *St. Louis, Vandalia & Terre Haute Railroad* v. *Terre Haute & Indianapolis Railroad*, 145 U. S. 393, the contract was not wholly executed. Indeed, it was executed only for a very small fraction of the term. The differences between that case and the cases at bar appear to us to relate to immaterial matters. The contract is not wholly executory in the cases at bar. It is partially executed only. But the test whether relief is

to be granted is, as was pointed out in *Eastern Expanded Metal Co.* v. *Webb Granite & Construction Co., ubi supra,* whether it is wholly unexecuted as to its illegal element. In the case at bar it was partially executed by all parties in respect of its illegal element.

There appears to us to be nothing contrary to this in the cases relied on by the plaintiff. In *Thomas* v. *West Jersey Railroad,* 101 U. S. 71, an illegal lease of a railroad was repudiated by the lessee, for which a fruitless effort was made to recover damages. All that was said in the opinion was directed to those facts. It was said in *Spring Co.* v. *Knowlton,* 103 U. S. 49, at page 58: "The question presented is, therefore, whether, conceding the contract to be illegal, money paid by one of the parties to it in part performance can be recovered, the other party not having performed the contract or any part of it, and both parties having abandoned the illegal agreement before it was consummated." No discussion is required to show the wide difference between such facts and those here presented. The decision in *Sampson* v. *Shaw,* 101 Mass. 145, affords no support to the contention of the plaintiff. That was a case where the plaintiff and the defendant's testator entered into an illegal agreement to create a corner in a certain stock and the former deposited with the latter money to carry out the joint enterprise. It was held that if the plaintiff advanced and lent the whole fund to the defendant's testator upon the understanding that the unexpended balance, if any, should be returned, he could not recover. But if the direction given when the money was deposited was merely that the testator "from time to time should take from the fund enough to pay the plaintiff's proportion of the expenses incurred and investment made, to such extent as the necessities of the speculation should require, the unexpended balance . . . would not be considered as paid by the plaintiff on an illegal contract, but would be recoverable." The defendant was permitted to show the amount expended in order to show that the illegal element of the contract was not entirely executory. Manifestly the ordinary instance of repudiation of a wager before the stakeholder has paid over, such as *McKee* v. *Manice,* 11 Cush. 357, and *Morgan* v. *Beaumont,* 121 Mass. 7, is distinguishable from the cases at bar. *Block* v. *Darling,* 140 U. S. 234, 239, is equally distinguishable. So far as there

is anything inconsistent with this conclusion in *Mallory* v. *Hanaur Oil Works*, 86 Tenn. 598, it is to the same extent inconsistent with *St. Louis, Vandalia & Terre Haute Railroad* v. *Terre Haute & Indianapolis Railroad*, 145 U. S. 393, and *Unckles* v. *Colgate*, 148 N. Y. 529, 538, 539.

There is an additional obstacle lying in the plaintiff's path, which did not exist in *St. Louis, Vandalia & Terre Haute Railroad* v. *Terre Haute & Indianapolis Railroad*, 145 U. S. 393, or even in *Mallory* v. *Hanaur Oil Works*, 86 Tenn. 598. The plaintiff alleges that the defendants, the Stamp Company and the directors, refuse to recognize him as a stockholder or to pay him dividends, or to distribute profits to him, because of a pretended cancellation of his shares of stock, and that acting under the feigned authority of contracts "A" and "B" a forfeiture of his shares of stock has been made. These acts are averred to be illegal because the contracts are illegal and also because their terms have not been complied with. But, although characterized as pretended, illegal and the result of unlawful conspiracy, the allegations of forfeiture and cancellation are definite and positive. One of the prayers, expressed in one bill and necessarily implied in the other, is that the defendants shall recognize the plaintiff as a stockholder and accord to him the rights of a stockholder as to dividends and otherwise. Thus the plaintiff is compelled by the exigencies of his situation to invoke the active interference of a court of equity to extricate himself from the alleged unlawful acts of the defendants, performed in pretended reliance upon the illegal contracts repudiated by him, in forfeiting and cancelling his shares of stock. The first element of his case to be established is that he is a stockholder. That lies at the threshold. If he cannot prove that, he has no standing. But in order to establish that essential fact, the acts of the directors and the Stamp Company in pretending to forfeit and cancel his stock must be declared void. That is an executed part of the illegal contract. The description in the pleadings of these acts as illegal and as done pursuant to the unlawful contracts and to a conspiracy, does not bridge the difficulty. If the cancellation and forfeiture has been in simulated conformity to the illegal contracts and thus apparently a corporate act, that unlawful conduct is one of the complaints of the plaintiff against which relief must be had, and in respect of which the court must

aid the plaintiff. But that is one part of the whole illegal scheme and must be so declared. It would be granting relief against an executed part of the contract to grant this prayer of the plaintiff. It appears to be essential to do this as a preliminary to affording any relief. Otherwise the plaintiff shows no private right. It seems to us to make no difference that these actions of the defendants took place after repudiation of the contracts by the plaintiff. Upon the allegations of the bill these acts are pretended to be in conformity to the authority conferred by the illegal contracts. The contracts by their terms are entire and not severable. They are executed in a particular as to which relief must be granted as a necessary pre-requisite to the general grounds alleged by the plaintiff. They occurred before any of his bills were filed. This circumstance in connection with all the other allegations appears to us to preclude the plaintiff from obtaining any relief.

In reaching this conclusion no lawful contract of the plaintiff, as stockholder or otherwise, is in any degree impaired.

The allegations to the effect that the plaintiff entered into the illegal arrangements in good faith and in full belief that they were lawful, and upon advice of counsel, are without avail. The plaintiff became a party to the illegal aspects of this business voluntarily, with a full knowledge of all the material facts, and did not act in consequence of mistake, fraud or accident. No new facts were subsequently disclosed. It was said in *Harriman* v. *Northern Securities Co.* 197 U. S. 244, at page 298, with reference to a like situation: "We regard the contention that complainants are exempt from the doctrine *in pari delicto* because the parties acted in good faith and without intention to violate the law as without merit. With knowledge of the facts and of the statute, the parties turned out to be mistaken in supposing that the statute would not be held applicable to the facts. Neither can plead ignorance of the law as against the other." See also *Commonwealth* v. *Mixer*, 207 Mass. 141; *United States* v. *Anthony*, 11 Blatchf. C. C. 200; *State* v. *Goodenow*, 65 Maine, 30.

The offers to return the dividends already received from the illegal methods of doing business, and to do equity in that respect, are of no consequence in view of the other allegations. Penitence after participation in the execution of illegal elements of the transaction affords no ground for relief. *Myers* v. *Meinrath*, 101

Mass. 366. The grounds which have been stated and upon which this opinion rests are applicable equally to each suit. They appear to us to be decisive against the right of the plaintiff to maintain either suit.

The plaintiff contends that several federal questions are raised upon the present records, and that his rights under the Federal Constitution have been disregarded by the conclusion we have reached. He alleges and contends that his right as a stockholder in the Stamp Company is a contract entitled to protection under § 10 of art. 1 of the United States Constitution. That allegation and contention, however sound they may be in the abstract, *Clearwater* v. *Meredith*, 1 Wall. 25, are not relevant to ,any issue presented on these records. No statute of the Commonwealth is relied on or referred to as "impairing the obligation" of the plaintiff's contractual right arising from his status as a stockholder in the Stamp Company. It was said in *Cross Lake Shooting & Fishing Club* v. *Louisiana*, 224 U. S. 632, at page 638, respecting the force and effect of § 10 of art. 1 of the Federal Constitution: "This clause, as its terms disclose, is not directed against all impairment of contract obligations, but only against such as results from a subsequent exertion of the legislative power of the State. It does not reach mere errors' committed by a State court when passing upon the validity or effect of a contract under the laws in existence when it was made. And so, while such errors may operate to impair the obligation of the contract, they do not give rise to a federal question. But when the State court, either expressly or by necessary implication, gives effect to a subsequent law of the State whereby the obligation of the contract is alleged to be impaired, a federal question is presented. In such a case it becomes our duty to take jurisdiction and to determine the existence and validity of the contract, what obligations arose from it, and whether they are impaired by the subsequent law. But if there be no such law, or if no effect be given to it by the State court, we cannot take jurisdiction, no matter how earnestly it may be insisted that that court erred in its conclusion respecting the validity or effect of the contract; and this is true even where it is asserted, as it is here, that the judgment is not in accord with prior decisions on the faith of which the rights in question were acquired." Manifestly no federal question arises in this par-

ticular. *Moore-Mansfield Construction Co.* v. *Electrical Installation Co.* 234 U.S. 619, 624, 625. *McCoy* v. *Union Elevated Railroad,* 247 U. S. 354, 363.

The plaintiff further alleges and strenuously contends that his property is taken from him without "due process of law" and that he is denied "equal protection of the laws" in contravention of the guarantees of the Fourteenth Amendment to the Constitution of the United States.

On the allegations of the bills in the suits at bar the plaintiff was one of the incorporators of the Stamp Company. The purpose for which it was organized was the conduct of a lawful business. The plaintiff's right as a shareholder was property. It was entitled to all the protection afforded to property by the State and Federal Constitutions. It may not be doubted that the protection afforded by that amendment is available in appropriate instances against decisions by the State courts. Its prohibitions are directed to all instrumentalities of government within the several States, including judicial, executive and legislative. The law as administered, interpreted and enforced by the State courts may deprive one of his property without due process of law, or deny to one the equal protection of the laws as well as a statute enacted by the Legislature. If the State courts deny due process of law or equal protection of the laws to any one who seasonably raises the question, they are amenable to the corrective power of the Supreme Court of the United States. *Scott* v. *McNeal,* 154 U. S. 34. *Chicago, Burlington & Quincy Railroad* v. *Chicago,* 166 U. S. 226. *Muhlker* v. *New York & Harlem Railroad,* 197 U. S. 544. *Myles Salt Co. Ltd.* v. *Iberia & St. Mary Drainage District,* 239 U. S. 478, 484. *Saunders* v. *Shaw,* 244 U. S. 317, 320. That principle we recognize and accept in all its amplitude.

But it appears to us that that principle has no pertinency to the questions raised on this record. It is settled that when a party has been given a full opportunity to be heard in the State court upon all the issues raised in a proceeding, and a decision has been rendered upon principles of general law, in reaching which the Constitution, laws, treaties or controlling rules of the United States are not necessarily involved, then no federal question is raised. It was said by Mr. Justice Gray in *Central Land Co.* v. *Laidley,* 159 U. S. 103, at page 112: "When the parties

have been fully heard in the regular course of judicial proceedings, an erroneous decision of a State court does not deprive the unsuccessful party of his property without due process of law, within the Fourteenth Amendment of the Constitution of the United States. *Walker* v. *Sauvinet*, 92 U. S. 90; *Head* v. *Amoskeag Co.* 113 U. S. 9, 26; *Morley* v. *Lake Shore Railroad*, 146 U. S. 162, 171; *Bergmann* v. *Backer*, 157 U. S. 655." When a case is presented in the State court for decision upon principles of general law alone, according to which in the ordinary course of the administration of justice rights of parties are determined and issues respecting the life, liberty and property of litigants are adjudicated, then no federal question is involved. *New York Life Ins. Co.* v. *Hendren*, 92 U. S. 286. *Delmas* v. *Insurance Co.* 14 Wall. 661, 666. *Delmar Jockey Club* v. *Missouri*, 210 U. S. 324, 335. Where a party seeks in the State court and is there "given opportunity, to litigate the rights claimed by" him, he cannot "complain that the guarantees of the Constitution of the United States were denied because the litigation did not result successfully." *Remington Paper Co.* v. *Watson*, 173 U. S. 443, 451. It is possible that these broad statements may be subject to one limitation, namely, that there may be a review by the Supreme Court of the United States where the decision of the State court, although ostensibly rendered on principles of general law and resting thus upon a "non-federal ground is so certainly unfounded that it properly may be regarded as essentially arbitrary or a mere device to prevent a review of the decision upon the federal question. *Leathe* v. *Thomas*, 207 U. S. 93, 99; *Vandalia Railroad* v. *South Bend,* [207 U. S.] 359, 367." But even then, if the principle adopted by the State court as one of general law "has fair support, we are not at liberty to inquire whether it is right or wrong, but must accept it, as we do other State decisions of non-federal questions. *Murdock* v. *Memphis*, 20 Wall. 590, 635; *Eustis* v. *Bolles,* [150 U. S. 361] 369 . . . *Arkansas Southern Railroad* v. *German National Bank*, 207 U. S. 270, 275." Mr. Justice Van Devanter, in *Enterprise Irrigation District* v. *Farmers Mutual Canal Co.* 243 U. S. 157, 164. For the purposes of the present decision, but without passing upon the point, we accept that limitation, although stated in another connection, as applying to the cases at bar.

The cases at bar have been decided, as was the earlier case in

227 Mass. 466 where no attempt was made to raise federal ques-
tions, upon what we conceive to be principles of general law.
These principles have broad application to all persons connected
with contracts and undertakings of any sort which are contrary
to express prohibitions of law or otherwise illegal. Notwithstand-
ing the arguments directed to the end of demonstrating the un-
soundness of the former decision either in its statement of the
governing rules of law or in its application of them to the facts al-
leged in the bill, we remain content with what there was decided.
It stands both upon the doctrine of *stare decisis* and of *res judicata.*

If, however, we are wrong in the view that no federal question
is presented, then we are of opinion that the plaintiff has not been
deprived of his property without due process of law, and has not
been denied the equal protection of the laws. This involves "the
consideration of what is due process of law. A precise definition
has never been attempted. . . . Its fundamental requirement
is an opportunity for a hearing and defence, but no fixed proce-
dure is demanded." *Ballard* v. *Hunter,* 204 U. S. 241, 255. "The
fundamental requisite of due process of law is the opportunity to
be heard. *Louisville & Nashville Railroad* v. *Schmidt,* 177 U. S.
230, 236; *Simon* v. *Craft,* 182 U. S. 427, 436." *Grannis* v. *Ordean,*
234 U. S. 385, 394. The words of Mr. Chief Justice Fuller in
*Caldwell* v. *Texas,* 137 U. S. 692, at page 697, are these: "Law, in
its regular course of administration through courts of justice, is
due process, and when secured by the law of the State, the con-
stitutional requisition is satisfied. . . . And due process is so
secured by laws operating on all alike, and not subjecting the
individual to the arbitrary exercise of the powers of government,
unrestrained by the established principles of private right and
distributive justice." It was said in *Jones* v. *Buffalo Creek Coal
& Coke Co.* 245 U. S. 328, 329, that "error of a trial judge in
. . . entering judgment after full hearing does not constitute a
denial of due process of law."

The plaintiff in the cases at bar sought the forum of the State
court. It is indubitable that he is and was subject to its jurisdic-
tion. He has been heard fully upon every issue which he has
raised. The procedure has been according to established prac-
tice. Painstaking consideration has been given to his every
argument. The conclusion, so far as it is adverse to his conten-

tions, has. been reached by "a course of legal proceedings according to those rules and principles which have been established in our systems of jurisprudence for the protection and enforcement of private rights." *Pennoyer* v. *Neff*, 95 U. S. 714, 733.

We are unable to discover any foundation for the contention that the plaintiff has been denied the equal protection of the laws. Resort has been had in deciding his cases to rules of law which are familiar. The substance of ancient maxims of the common law, such as *in pari delicto potior est conditio defendentis*, and *ex turpi causa non oritur actio*, and the principles which inevitably flow from them, form the basis of the decision. These principles have been applied to varying phases of human affairs in this Commonwealth for more than a century beginning with *Worcester* v. *Eaton*, 11 Mass. 368. The decision has been rendered upon principles ,of general law alone constantly recognized and enforced, not only in this Commonwealth but in many other jurisdictions including the Supreme Court of the United States. *Harriman* v. *Northern Securities Co.* 197 U. S. 244, 295, 296. *Pullman's Palace Car Co.* v. *Central Transportation Co.* 171 U. S. 138, 150, 151, and cases there collected. *Dent* v. *Ferguson*, 132 U. S. 50, 65–68. *McMullen* v. *Hoffman*, 174 U. S. 639, 654, 655. *Riggs* v. *Palmer*, 115 N. Y. 506, 511, 512. *Taylor* v. *Chester*, L. R. 4 Q. B. 309, 313. *White* v. *Franklin Bank*, 22 Pick. 181. *Huckins* v. *Hunt*, 138 Mass. 366. *Horton* v. *Buffinton*, 105 Mass. 399. *West Springfield & Agawam Street Railway* v. *Bodurtha*, 181 Mass. 583, 587. *Eastern Expanded Metal Co.* v. *Webb Granite & Construction Co.* 195 Mass. 356 and cases there collected. *Otis* v. *Freeman*, 199 Mass. 160. *Rudnick* v. *Murphy*, 213 Mass. 470, 471.

In its last analysis the plaintiff's contention is that our decision is "so plainly arbitrary and contrary to law as to be an act of mere spoliation." It is needless to amplify further our conclusion that "we fail to perceive the slightest semblance of ground for such a contention." *Delmar Jockey Club* v. *Missouri*, 210 U. S. 324, 335.

The plaintiff also invokes the full faith and credit clause of art. 4, § 1 of the Constitution of the United States and § 237 of the Judicial Code, (U. S. St. 1911, c. 231,) as amended by the act of Congress approved September 6, 1916, (U. S. St. 1916, c. 448,) in support of its contention that it is entitled to share in the

profits of the Stamp Company for the year 1915.   We are unable to discern that these provisions are apposite to the issues here depending.   See *Stadelman* v. *Miner,* 246 U. S. 544; and *Ireland* v. *Woods,* 246 U. S. 323.

In each case let the entry be

*Bill dismissed with costs.*