Welsh, P.J.
This is a civil action pursuant to the Brookline Rent and Eviction Control By-law[1], in which the plaintiff (hereinafter, the tenant) seeks to recover rent paid to the defendant (hereinafter, the landlord) for a rental unit not authorized by the Brookline Rent Control Board, plus damages of up to three times the amount of rent charged for said unit[2] plus attorney’s fees.
The landlord in his answer denied the allegations of the complaint.
The trial court found for the tenant and awarded damages of $6,350.00 plus interest and costs.[3]
The evidence introduced at trial tended to show the following:
The landlord’s premises at 128 Fuller Street in Brookline became subject to the Rent Control By-law in 1973. At that time, there were 10 rental units in the building. Included were two basement rental units designated 9 and 9A. The Rent Control Board at that time ordered that the two basement units be consolidated into one unit. In September, 1977, the Brookline Rent Control Board (hereinafter, the Board) fixed the rent ceiling for the consolidated unit at $311.00 per month. The landlord, deeming the basement area more suitable for rental as two units, rented the area as separate units in violation of the direction that the two basement units be consolidated. In a transparent attempt to circumvent the Board’s directive for consolidation, the landlord and the tenant executed a document describing the demised premises in the following manner: “Suite 9-9A at 128 Fuller Street, Brookline, Massachusetts, (consisting of) four rooms (sic) and two baths.” The document called for a monthly rental of $305.00 for the premises. It further provided that “The several obligations of Mr. and Mrs. Esler and - are One Hundred Sixty ($160.00) Dollars for the former and One Hundred Forty-five ($145.00) Dollars for the latter.” The lease was signed by the Eslers, by the tenant and later by the landlord. The landlord informed the tenant that this type of lease had to show one apartment because of a certain ruling of the Brookline Rent Control Board. The trial judge warrantably found that the tenant knew the true state of affairs. The Eslers occupied one of the units and the tenant the other. As the trial judge aptly put it in his findings, the landlord with the knowledge of the tenant literally “papered over” the true state of affairs by describing the two units as though there were one and denominating the obligations as to each tenant as several rather than joint. The tenant occupied the studio apartment that had hitherto been designated 9A prior to the consolidation order from September 1, 1977 until April 30, 1978. The motive in vacating the premises was unclear. However, he got married in March. Shortly thereafter, the tenant learned that the rent control board had become concerned about the legality of the particular arrangement. Upon vacating, he demanded the return of two months rent which had been prepaid.
Relying upon the significant public policy considerations embodied in Article XXXVIII, Section 11 of the Rent Control By-law, the trial court concluded that the defendant landlord was obligated to return threefold everything he obtained from the tenant, plus attorney’s fees of $2,000.00 plus *247 interest and costs. The court found that no damages were proven with respect to the “illegality” of the apartment.
We conclude that there was prejudicial error in the award of damages to the tenant including attorney’s fees, and that judgment enter in a lesser amount.
1. The Rent Control By-law of the Town of Brookline was enacted by the town pursuant to an enabling statute, St. 1970, c. 843. Section one declares that a serious public emergency exists in the town relative to a shortage of housing stock and that unless rents are controlled a serious threat will be posed particularly as regards low and moderate income tenants. Section 5(b) of the By-law required the registration of all controlled rental units with the Board. Section 11 which is the part of the by-law upon which the tenant bases Count I of his action, provides as follows:
Section 11. Civil Remedies, (a) Any person who demands, accepts, receives or retains any payment of rent, in excess of the maxiumum lawful rent, in violation of the provisions of this by-law or any regulation or order hereunder promulgated, shall be liable as hereinafter provided to the person from whom such payment is demanded, accepted, received or retained, or to the Town of Brookline for reasonable attorney’s fees and costs as determined by the court, plus liquidated damages in the amount of one hundred dollars, or not more than three times the amount by which the payment or payments demanded, accepted, received or retained, exceed the maximum rent which could be lawfully demanded, accepted, received or retained, whichever is the greater; provided that if the defendant proves that the violation was neither willful nor the result of failure to take practicable precautions against the occurrence of the violation, the amount of such liquidated damages shall be the amount of the overcharge or overcharges.
The landlord contends that the maximum lawful rent referred to in the By-law has reference to the maximum rent established by the board for a particular rental unit, and that since the total rent for the two unauthorized units did not exceed the ceiling established by the Board for the authorized consolidated unit, Section 11 is inapposite.
We agree. The basis for an award of damages under this section is the amount of overcharge for rent for a particular unit. The fact that rent was exacted for an unauthorized unit, or, as in this case for an unauthorized subdivision of an authorized unit does not, in our view, trigger Section 11. We need not decide whether the actions of the landlord would authorize the board to impose an appropriate sanction under some other provision of the By-law.[4] Had the legislative intent been to require a forfeiture of thrice the rent paid for an unauthorized unit, apt language to accomplish this end could easily have been included. It is not the province of this court to “rewrite” this By-law. See Martinelli v. Burke, 298 Mass. 390, 392 (1937). In a tortured attempt to extend Section 11 to the case at bar, the tenant advances the following line of reasoning: Since the unit rented to the tenant was not an authorized unit, the court should treat this as the equivalent of an authorized unit with a rent ceiling of zero. Thus, the argument proceeds, the total rent exacted for the unit amount to an overcharge within the ambit of Section 11. *248 Once this point is reached, the violation is to be deemed either wilful or the result of failure to take practicable precautions unless the landlord proves otherwise. The fatal flaw in the syllogism exists in the premise that the letting of an unauthorized unit is the equivalent for purposes of the By-law of the letting of an authorized unit with a ceiling of zero. Since Section 11 is silent on its application to unauthorized units, the court may not “read into” the By-law coverage not provided for by the authority which enacted it. King v. Viscoloid, Co., 219 Mass. 420, 425 (1914). We conclude that Section 11 does not apply to the case at bar.
2. We consider that the correct analysis in this case requires resort to common law rules which have evolved with regard to contracts made in violation of law. As a general rule, in the absence of an unequivocally expressed legislative mandate, courts are reluctant to infer a legislative intent to effect a forfeiture of private contractural rights when some statute is transgressed. Valley Stream Teachers Federal Credit Union v. Commissioner of Banks, 376 Mass. 845, 852 (1978). Like the statute which was in issue in Valley Stream, the By-law in the present case is silent as to whether the violation of the order requiring consolidation of units 9 and 9A into a single unit should so taint the leasing transaction as to require a forfeiture. In determining whether a sanction beyond that expressly provided for in the statute or by-law contravened should be imposed, the following considerations are germane: the nature of the subject matter of the contract; the extent of the illegal behavior; whether the illegal behavior was a material part of the performance of the contract; the extent of the public policy underlying the prohibition; whether that policy would be seriously impeded or frustrated by the denial of the added sanction; how serious or deserved would be the foreiture suffered; how gross or undeserved would be the windfall. Town Planning & Eng’r Assocs. v. Amesbury Specialty Co., Inc., 369 Mass. 737, 745-746 (1976). These considerations are akin to the factors traditionally addressed by courts of equity where illegality has to some degree tainted the contractual dealings of the parties. Valley Stream, supra at 854.
The illegality at issue in this case arises from circumstances extrinsic to the lease itself. The object of the contract — the letting of a flat for use as a residence — is neither unlawful in itself nor does it violate any public policy. Compare Otis v. Freeman, 199 Mass. 160, 163 (1908). There is no suggestion that the contract was carried out in an unlawful manner, except that the unit was not registered as a separate unit. The illegal behavior was merely incidental to the performance of the contract. There is no indication that the tenant, whom the court warrantably found knew he was embarking on an undertaking of questionable legality, was compelled to accede to this because of extreme disparity in the relative bargaining positions of the parties. See Bernhardt v. Atlantic Finance Corp. 311 Mass. 183, 188 (1942). The characteristics of the performance which were of value to the parties were apart from those which the taint of illegality arose. The misconduct of the landlord, in which the tenant knowingly acquiesced, does not counterbalance the enormity of the forfeiture which not only deprives the landlord of triple the entire rent paid counsel fees and costs, but bestows a large and unmerited windfall upon the tenant, who not only receives 3 times the rent paid, plus a substantial award for counsel fees. We conclude that so extreme a sanction is disproportionate when viewed in the light of the purposes of the Rent Control By-law.
We are dealing with a contract largely executed, in the sense that all of the *249 rent has been paid without objections until the end, and the benefit of the use and enjoyment of the premises received, with the exception of 2 months rent which had been prepaid. As was stated in Valley Stream, recourse to long established principles of equity and justice is the reason for the considerations as to the forfeiture. Supra at 854. One who participates in violations of the law by joining an illegal contract will receive no assistance from the court either in enforcing the contract or in avoiding its consequences. Downey v. Charles S. Gove Co., 201 Mass. 251, 252 (1909). When a contract in violation of law is fully executed, neither party may avoid its effect, or recover back what he has paid or parted with. Pelosi v. Bugbee, 217 Mass. 579, 581 (1914); Worcester v. Eaton, 11 Mass. 368, 376 (1814).
In arriving at the conclusion we articulate, we are not unmindful of the important public purpose served by the Rent Control By-law. In our view, effectuation of the laudable goals of the by-law do not require so stringent a sanction as that visited upon the landlord in this case. Nor would they be unduly impeded by the result we reach. No rent was demanded or obtained in excess of the maximum rent authorized for the combined unit. The unlawful “subdivision” of the single authorized unit into two units had the tendency rather to increase than to decrease the housing stock available for rental. Unquestionably, what was done here was unlawful. Whether sanctions authorized elsewhere in the by-law ought to be imposed is a matter for the Brookline Rent Control Board. We conclude that the public policy embodied in the Rent Control By-law does not require the sanctions imposed by the trial judge. As Professor Corbin points out in his well known treatise on the law of contracts, it does not necessarily follow that the violator of a statute which renders the doing of certain acts without a license unlawful must be penalized by denying him the fruit of his bargain. 6A A.L. CORBIN, CONTRACTS § 1512 at 713 (1962). (Quoted with approval of Town Planning & Eng’r Assocs, Inc. v. Amesbury Specialty Co., Supra 746-747.)
For all of the foregoing reasons, we conclude that justice does not require awarding damages to the tenant based upon the contract. Rather justice is best served to leave the parties in status quo ante as regards this action, except for two months rent prepaid to the landlord for which the tenant is entitled to restitution. We regard the tenant’s vacation of the apartment as an act disaffirming so much of the contract as remained executory. The fact of illegality would not preclude restitution in the circumstances here. Compare Duane v. Merchant Legal Stamp Co., 227 Mass. 466, 469 (1917); See RESTATEMENT, CONTRACTS, SECOND § 198; 6A A.L. CORBIN, CONTRACTS § 1541 (1962).
The finding for the tenant and the judgment entered thereupon are to be vacated. A new judgment is to enter awarding the tenant $290.00[5] plus interest. Neither party is to have costs.

So ordered.

 Article XXXVIII, Section 11 of the By-laws of the Town of Brookline.

There were counts under G.L.c. 186,815B and under G.L.c. 93A, upon which the court found for the defendant.

Since $2,000 of the award was for attorney’s fees, interest on that sum was calculated from the date of commencement of the action.

It was suggested during oral argument that § 12(c) of the By-law authorizes a fine of up to $1,000. for a wilful violation of the by-law or any regulation thereunder. Since this section was not included in the report, the contention is not properly before us.

The monthly rental was $145.00.